36 F.3d 684
 30 Fed.R.Serv.3d 725
 The ESTATE OF Leroy PORTER by its administrator Ernest
NELSON, Ernest Nelson, individually; Josie May Porter,
individually; Robert Jerome Porter, individually; and Mary
Louis James, individually, Plaintiffs-Appellants,
v.
STATE OF ILLINOIS, Illinois Department of Mental Health,
Elgin Mental Health Center, Angelo Campagna, and
Roalda Alderman, Defendants-Appellees.
 Nos. 93-2729, 93-2730.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 19, 1994.
Decided Sept. 28, 1994.
 
 Sam Cuba, Law Offices of Sam Cuba, Orland Park, IL (argued), for plaintiffs-appellants.
 Jerald S. Post, Asst. Atty. Gen., Office of Atty. Gen., Civ. Appeals Div., (argued), Jeffrey W. Finke, Raleigh & Hartmann, Chicago, IL, for defendants-appellees.
 Before SPROUSE,* COFFEY and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 The plaintiffs, the estate of Leroy Porter and several of Porter's relatives, filed this suit in federal court against the state of Illinois, the Illinois Department of Mental Health, the Elgin Mental Health Center, and three of Elgin's employees--Roalda Alderman, Angelo Campagna, and Frank Lara (in both their individual and official capacities). The suit was brought pursuant to 42 U.S.C. Sec. 1983 and alleged violations of the Eighth and Fourteenth Amendments in connection with the death of Leroy Porter, a patient at Elgin. All of the defendants filed motions to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(1) and 12(b)(6).
 
 
 2
 The district court dismissed the suit, in its entirety, against the State of Illinois, the Illinois Department of Mental Health, and Elgin because it found that the suit was barred by the Eleventh Amendment. Likewise, the court dismissed the official-capacity claims against the Elgin employees. The court found, however, that the Eleventh Amendment did not bar the claims against the employees acting in their individual capacities.
 
 
 3
 The court dismissed the Eighth Amendment claim against the employees pursuant to Fed.R.Civ.Pro. 12(b)(6). According to the court, the plaintiffs' complaint failed to "allege necessary elements of an Eighth Amendment claim such as actual notice of imminent harm and direct personal involvement of defendants." The court also dismissed the Fourteenth Amendment claim against Lara. However, the court refused to dismiss the Fourteenth Amendment claim against defendants Alderman and Campagna acting in their official capacities.
 
 
 4
 The plaintiffs did not appeal the district court's decision. Rather, they filed suit in state court against the State of Illinois, the Illinois Department of Mental Health, Elgin, and Alderman and Campagna (in their official capacities) alleging the same Fourteenth Amendment violations contained in their original federal court complaint. Even though the suit was filed against Alderman and Campagna in their official capacities, it asked for monetary damages against them in their individual capacities. The Illinois Attorney General subsequently filed a Notice of Removal on behalf of defendant Campagna. The plaintiffs did not file a motion in the district court requesting a remand to the state court.
 
 
 5
 The case that was removed from state court was consolidated with the one still pending in the district court against Alderman and Campagna acting in their individual capacities. Alderman and Campagna then moved for summary judgment. The defendants argued that they "were not personally involved in, and as a matter of constitutional law, have no culpability for, the death of Leroy Porter." In opposition to the defendants' motion for summary judgment, the plaintiffs argued that there was sufficient evidence to show that the defendant employees "failed to provide or enforce policies which would protect decedent, Leroy Porter's right to safety." They also argued that, by removing part of this case back to federal court, the Illinois Attorney General had waived the State's Eleventh Amendment immunity. In the alternative, the plaintiffs asked the district court to remand the official-capacity claims against Alderman and Campagna to state court. Three months after Alderman and Campagna filed their motion for summary judgment, the plaintiffs filed a motion to amend their complaint.
 
 
 6
 The district court granted summary judgment in favor of Alderman and Campagna because it concluded that the plaintiffs had failed to present "any facts from which a reasonable jury could find that defendants were directly responsible for Porter's constitutional violation." The court also concluded that Illinois had not waived its Eleventh Amendment immunity by removing the case back to federal court. It also refused to remand part of the case to state court because the plaintiffs had failed to file a motion to remand within thirty days after the filing of the Notice of Removal as required by 28 U.S.C. Sec. 1447(c). Finally, the court denied the plaintiffs' motion to file an amended complaint.
 
 I. Background
 
 7
 Leroy Porter was involuntarily committed to Elgin pursuant to a civil commitment order, as well as a felony probation order. Elgin is a hospital for the mentally ill and is part of the Illinois Department of Mental Health and Developmental Disabilities. Porter was killed in his room, allegedly by Denver Hampton, another Elgin patient. Porter's death occurred around midnight, during a shift change of Mental Health Technicians ("MHT").[1] At the time of Porter's death, defendant Alderman was the Director of the Elgin facility. Defendant Campagna was the Deputy Director of the facility. Neither of the defendants was present at the facility when Porter was killed.
 
 
 8
 On the night of Porter's death, the midnight to 8:00 a.m. shift of MHT's arrived late for work. Kevin Gehl, one of the MHT's assigned to the 4 p.m. to midnight shift, was responsible for monitoring the patients' rooms. Gehl, however, left his post and joined two other MHT's, Rodnee Ross and Melinda Wilson, at the front of the building. The MHT's were waiting to be relieved by members of the midnight to 8:00 a.m. shift.
 
 
 9
 While Gehl was at the front of the building, an Elgin patient, Denver Hampton, was seen in Porter's room. Shortly after midnight, Porter was found in his room--strangled to death. Earlier in the evening, between 5:00 p.m. and 7:00 p.m., Hampton was placed in restraints for fighting. He was released from the restraints by MHT Ross after he calmed down.
 
 II. Analysis
 
 10
 The plaintiffs allege that the district court committed three errors. First, they argue that the district court erred in granting summary judgment for Alderman and Campagna with respect to the individual-capacity claims. Second, the plaintiffs claim that the district court abused its discretion in refusing to allow them to amend their complaint after the defendants moved for summary judgment. Third, they contend that the court erred in finding that the Illinois Attorney General did not waive the State's Eleventh Amendment immunity by removing part of this case back to federal court.
 
 A. Individual-Capacity Claims
 1. Summary Judgment
 
 11
 We review de novo a district court's grant of summary judgment, viewing the record in the light most favorable to the non-moving party. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir.1992).
 
 
 12
 Under Fed.R.Civ.Pro. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 13
 The plaintiffs brought this suit pursuant to 42 U.S.C. Sec. 1983, alleging that defendants Alderman and Campagna violated Leroy Porter's constitutional right to reasonably safe conditions. The Supreme Court has held that involuntarily committed mental patients have a right to safe conditions protected by the substantive component of the Fourteenth Amendment's Due Process Clause. In Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated:
 
 
 14
 In the past, this Court has noted that the right to personal security constitutes a "historic liberty interest" protected substantively by the Due Process Clause. And that right is not extinguished by lawful confinement, even for penal purposes. If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed--who may not be punished at all--in unsafe conditions.
 
 
 15
 Id. at 315-316, 102 S.Ct. at 2458 (citations omitted).
 
 
 16
 In determining whether an involuntarily committed patient's right to reasonable safety has been violated, courts may only "make certain that professional judgment in fact was exercised." Id. at 321, 102 S.Ct. at 2461. "It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id.
 
 
 17
 This "professional judgment" standard differs from the standard applied in the prison context. There, an inmate must show that prison officials exhibited a "deliberate indifference" to his safety in order to prevail on an Eighth Amendment claim. Farmer v. Brennan, --- U.S. ----, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Supreme Court recently defined the "deliberate indifference" standard:
 
 
 18
 We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.
 
 
 19
 Id. at ----, 114 S.Ct. at 1979.
 
 
 20
 Unfortunately, we have not been provided with a definition of the "professional judgment" standard. We know that it does not encompass mere acts of negligence. Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("We conclude that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."). Beyond that, the standard is less certain.
 
 
 21
 Some have suggested that the Supreme Court has impliedly overruled the "professional judgment" standard in favor of the "deliberate indifference" standard applied to prison officials. The Third Circuit rejected such an argument, and we concur. See Shaw by Strain v. Strackhouse, 920 F.2d 1135 (3d Cir.1990). In Youngberg, the Supreme Court specifically stated that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 321-322, 102 S.Ct. at 2461 (citation omitted). Application of the same standard--deliberate indifference--to both settings would undermine the Court's pronouncement that involuntarily committed patients are entitled to more protected "conditions of confinement" than convicted criminals.
 
 
 22
 That still leaves the problem of defining the "professional judgment" standard. We agree with the Third Circuit, however, that "[p]rofessional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct." Strackhouse, 920 F.2d at 1146.
 
 
 23
 In reaching its decision in this case, the district court concluded that the plaintiffs had failed to "provide the necessary bridge between defendants' policy decisions" and the denial of Porter's constitutional rights. Our cases require a showing that supervisors--like Alderman and Campagna--were "direct[ly] responsibl[e] for the improper action" before liability will attach under section 1983. Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983). "A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." Id. (citation omitted).
 
 
 24
 The plaintiffs argue that such a causal connection existed in this case. The plaintiffs primarily attack Elgin's policy allowing MHT's to release restrained patients, like Hampton, if that patient appears calm and is in control of his emotions. The plaintiffs argue that MHT's are not qualified to make such decisions because they lack proper training and because Elgin is less than vigilant in its hiring practices. However, even if we were to agree with the plaintiffs that Elgin's policy of allowing MHT's to release restrained patients is somehow improper, there is an insufficient causal connection between that policy and Porter's death.
 
 
 25
 Hampton was placed in restraints around 5:00 p.m. because he had been fighting with another patient and was checked every 15 minutes beginning at 5:15 p.m. He appeared calm and quiet when he was checked at 5:45, 6:00, 6:15, 6:30 and 6:45. Accordingly, MHT Ross released him at 7:00 p.m. Porter was killed around midnight, five hours after Hampton was released from restraints. Enough time passed between Hampton's release and Porter's death to dissipate any apparent causal connection between the two events.
 
 
 26
 Moreover, the plaintiffs do not contend that Elgin's policy concerning when a patient may be released from restraints is improper. Rather, they contend that Elgin's policy concerning who may release patients from restraints is improper. The plaintiffs do not allege, however, that other professionals would have been better able to implement Elgin's restraint policy. It is questionable whether greater training and medical knowledge would make an employee better at deciding whether a patient was calm enough to be released from restraints.
 
 
 27
 Neither can the plaintiffs show that Porter was killed because Elgin had a policy of permitting MHT's to leave their posts during shift changes. Elgin's policy was just the opposite, MHT's were expected to remain at their posts until relieved. MHT Gehl admitted that he knew Elgin's policy prohibited him from leaving the patients' rooms unattended. Following Porter's death, Gehl was subjected to disciplinary action for leaving the patients' rooms unattended and resigned prior to being discharged.
 
 
 28
 Given the obvious lack of connection between the policies set by Alderman and Campagna and Porter's death, the district court properly granted summary judgment in their favor.
 
 2. Motion to Amend the Complaint
 
 29
 Under Federal Rule of Civil Procedure 15(a), a party is permitted to amend its pleading once as a matter of right at any time before a responsive pleading is filed. "Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). " 'The denial of a motion to amend the pleadings pursuant to Rule 15(a) will be overturned only if the trial court abused its discretion.' " Wilson v. American Trans Air, Inc., 874 F.2d 386, 391 (7th Cir.1989) (quoting Glick v. Koenig, 766 F.2d 265, 268 (7th Cir.1985)).
 
 
 30
 The plaintiffs filed a motion to amend their complaint three months after the defendants moved for summary judgment. The proposed amended complaint included the following additional allegations:
 
 
 31
 f. The staff was inadequately trained, in that mental health technicians were only given a three week training course. Further, said staff were not required to have a high school degree nor to have a clean criminal record.
 
 
 32
 g. As a matter of policy, Elgin and the Defendants were permitting mental health technicians, woefully and inadequately trained though they were, to decide when and if to allow restrained patients out of restraints. Said procedure was a violation of Illinois Revised Statutes Chapter 91 1/2, Section, 2-108 RESTRAINTS (Text of paragraph effective July 1, 1988).h. Defendant allowed as a policy a shift change procedure which did not effectively stop outgoing staff from leaving before incoming staff arrived. This caused the nighttime intra-inmate visits to be alone. Further, Defendants had knowledge that the employee who actually allowed Denver Hampton out of restraints was on record of being "AWOL" four times in the year before the incident in question.
 
 
 33
 Our cases make plain that a "district court does not abuse its discretion in denying a motion to amend when amending the pleading would be a futile act." Wilson, 874 F.2d at 392 (citation omitted). "An amendment is a 'futile gesture' if the amended pleading could not survive a motion for summary judgment." Id. (citing Collyard v. Washington Capitals, 477 F.Supp. 1247, 1249 (D.Minn.1979)). We have already considered the additional allegations contained in the proposed amended complaint and determined that they could not survive a motion for summary judgment. Thus, the district court did not abuse its discretion in denying the plaintiffs' motion to amend their complaint.
 
 B. Official-Capacity Claims
 
 34
 The plaintiffs contend that Illinois waived its Eleventh Amendment[2] immunity by removing part of this case (the official-capacity claims against Alderman and Campagna) back to federal court. While the removal in question took place on behalf of state employee Angelo Campagna, the State of Illinois' Eleventh Amendment rights were still implicated. Federal lawsuits naming state officials as defendants will give rise to Eleventh Amendment immunity if the state is " 'the real, substantial party in interest.' " Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350 (1945)). Such is the case where an individual sues a state employee acting in his official capacity and seeks retrospective relief (money damages from the state treasury). Kroll v. Board of Trustees of Univ. of Ill., 934 F.2d 904, 907-908 (7th Cir.1991) (citing Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).
 
 
 35
 However, it is undisputed that a state may waive its Eleventh Amendment immunity and consent to suit in federal court. See, e.g., Welch v. Texas Dep't of Highways & Pub. Transp., 483 U.S. 468, 473, 107 S.Ct. 2941, 2946, 97 L.Ed.2d 389 (1987). "A State may effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving its immunity to suit in the context of a particular federal program." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 n. 1, 105 S.Ct. 3142, 3145 n. 1, 87 L.Ed.2d 171 (1985). Earlier Supreme Court cases indicate that a state may also waive its Eleventh Amendment immunity through the conduct of attorneys representing the state. See Ford Motor Co. v. Department of Treasury of State of Indiana, 323 U.S. 459, 466-470, 65 S.Ct. 347, 351-353, 89 L.Ed. 389 (1945); Sosna v. Iowa, 419 U.S. 393, 369 n. 2, 95 S.Ct. 553, 555-556 n. 2, 42 L.Ed.2d 532 (1975).
 
 
 36
 The plaintiffs do not contend that Illinois, through its constitution or statutes, waived its Eleventh Amendment immunity. Rather, they argue that the Illinois Attorney General waived the State's immunity through his conduct in this case. Specifically, they contend by removing part of this case back to federal court after the district court had dismissed the same claims, the Illinois Attorney General consented to suit on behalf of the State. However, state officials can only waive a state's Eleventh Amendment immunity if they are specifically authorized to do so by the state's constitution, statutes, or decisions. Ford Motor Co., 323 U.S. at 467, 65 S.Ct. at 352; Silver v. Baggiano, 804 F.2d 1211, 1214 (11th Cir.1986) ("[R]emoval by state officials of a suit containing state law claims to federal court does not amount to waiver of Eleventh Amendment immunity unless those state officials are authorized to waive such immunity.") (citations omitted).
 
 
 37
 In support of their position that Illinois waived its Eleventh Amendment immunity, the plaintiffs point us to Vargas v. Trainor, 508 F.2d 485 (7th Cir.1974), cert. denied, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975). In that case, the court found that certain statements made by the Illinois Attorney General in a memorandum to the court constituted a waiver of Illinois' Eleventh Amendment immunity. The court did not, however, discuss whether the Illinois Attorney General had the authority, under state law, to waive Illinois' sovereign immunity.
 
 
 38
 As Illinois law now stands, the Attorney General is not authorized to waive Illinois' Eleventh Amendment immunity. People v. Patrick J. Gorman Consultants, Inc., 111 Ill.App.3d 729, 67 Ill.Dec. 540, 542, 444 N.E.2d 776, 778 (1982) ("[O]nly the General Assembly, and not the Attorney General, can determine when claims against the state will be allowed. And the legislature has determined that sovereign immunity is waived only when suits against the State are brought pursuant to the Court of Claims Act.") (citations omitted); see also Local 3236 of Ill. Fed'n of State Office Educs. v. Illinois State Bd. of Educ., 121 Ill.App.3d 160, 76 Ill.Dec. 663, 666-667, 459 N.E.2d 300, 303-304 (1984). Therefore, Illinois has not waived its Eleventh Amendment immunity.
 
 
 39
 As a related matter, we must address whether the claims against Alderman and Campagna were properly removed from state to federal court. We recently held that removal of a case to federal court was improper where it contained claims barred by the State of Illinois' sovereign immunity. Frances J. v. Wright, 19 F.3d 337 (7th Cir.1994):
 
 
 40
 By the plain meaning of Sec. 1441(a), an action that contains claims barred by sovereign immunity, cannot, in whole or in part, be removed from the state courts to a federal forum because it is not an action within the original jurisdiction of the district courts.
 
 
 41
 Id. at 340. This is so because the district courts lack original subject matter jurisdiction over claims barred by the Eleventh Amendment. Id. at 340 (citing Crosetto v. State Bar, 12 F.3d 1396, 1400 (7th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994)).
 
 
 42
 In this case, there is no question that the claims against Alderman and Campagna, acting in their official capacities, are barred by the Eleventh Amendment. Thus, the district court lacked subject matter jurisdiction over those claims and removal was improper. Accordingly, the district court erred in refusing to remand those claims to the Illinois state court.[3]
 
 III. Conclusion
 
 43
 For all of the foregoing reasons, the decision of the district court is AFFIRMED in part and REVERSED in part. This case is REMANDED to the district court with directions to remand the official-capacity claims against the defendants to Illinois state court.
 
 
 
 *
 The Honorable James M. Sprouse of the United States Court of Appeals for the Fourth Circuit, sitting by designation
 
 
 [1]
 MHT's are similar to nurse's aides in conventional hospitals
 
 
 [2]
 Read literally, the Eleventh Amendment does not apply to suits brought by citizens against the state in which they reside. See U.S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). However, the Supreme Court has held that states have immunity in federal court against suits brought by their own citizens. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). For simplicity, we refer to this immunity as "Eleventh Amendment immunity."
 
 
 [3]
 The Plaintiffs did not argue on appeal that the district court erred in refusing to send the official-capacity claims back to state court. Nonetheless, because Eleventh Amendment immunity questions are jurisdictional in nature, we may raise it sua sponte. Crosetto, 12 F.3d at 1402 n. 10