**REVISED, September 4, 1998**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 97-60835
_____

MAGNOLIA VENTURE CAPITAL CORPORATION,

Plaintiff-Appellee,

VERSUS

PRUDENTIAL SECURITIES, INC., ET AL.,

Defendants,

MISSISSIPPI DEPARTMENT OF ECONOMIC
AND COMMUNITY DEVELOPMENT,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Mississippi
_____
August 28, 1998

Before DAVIS, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this appeal we are asked to consider whether the Eleventh Amendment bars this suit. The district court ruled that the Mississippi Department of Economic and Community Development ("MDECD") had waived its Eleventh Amendment immunity, and therefore denied MDECD's Motion to Dismiss. For reasons set forth below, we reverse and remand this case to the district court.

I.

In 1994, the Mississippi Legislature enacted the Venture Capital Act of 1994 ("the Act"), codified at Miss. Code Ann. §§ 57-

77-1 to 57-77-39. The legislature passed the Act to provide capital to new growth-oriented businesses and create new jobs. In accordance with the Act, the Mississippi Department of Economic and Community Development, an agency of the State of Mississippi, incorporated Magnolia Capital Corporation ("MCC"), a non-profit corporation. MDECD also formed a for-profit corporation known as Magnolia Venture Capital Corporation ("MVCC"), with MCC as the sole shareholder. In turn, MVCC created and served as the general partner in the Magnolia Venture Capital Fund Limited Partnership ("the Partnership"), which was to provide venture capital to Mississippi businesses.

In addition to creating these entities, the legislature provided for funding of these corporations through the sale of $20,000,000 in general obligation bonds by the State Bond Commission. The proceeds of these bonds went to MDECD, which then made a $20,000,000 non-recourse loan to MCC. MCC then deposited approximately $6,200,000 of the funds with the State Treasurer for investment in zero coupon bonds. MCC pledged these zero coupon bonds to secure the loan. MCC then invested the balance of the $20,000,000, or roughly $13,800,000, in MVCC as an equity contribution. MCC became MVCC's sole shareholder. MVCC then invested approximately $8,000,000 in the Partnership and procured a private investment totaling approximately $5,000,000. The Partnership began accepting applications for loans in January of 1996.

In April of 1997, Lisa Looser, purporting to act on behalf of MVCC, executed a Pledge Agreement purporting to grant a first

priority security in certain assets of MVCC to MDECD.[1]  This agreement secured the obligations, indebtedness, and liabilities under the Loan Agreement between MCC and MDECD.  Later that month, MDECD notified MVCC that it was in default under the terms of the Loan Agreement and the Pledge Agreement, and requested that MVCC deliver the pledged assets to MDECD.  This requested amount included approximately $11,000,000 that MVCC had invested with Prudential Securities, Inc. ("Prudential").  MVCC refused to deliver the assets and MDECD placed Prudential on notice of its claim to the funds and demanded that Prudential provide the funds to MDECD.  Prudential responded by placing a "freeze" on the assets in its possession.  As a result of this freeze, MVCC filed for protection under Chapter 11 of the Bankruptcy Code.

After instituting the Chapter 11 proceeding, MVCC filed an adversary action against MDECD seeking a ruling that MDECD had no lien or interest in the funds held by Prudential.  After MDECD moved to dismiss the proceeding on Eleventh Amendment grounds, MVCC voluntarily dismissed the action.  However, MVCC contemporaneously filed a new adversary proceeding against Prudential seeking a release of the freeze on MVCC's assets in the Prudential investment account.  MVCC also alleged that MDECD held no perfected lien or security interest in MVCC's assets in the hands of Prudential. MVCC requested a declaratory judgment that the assets in Prudential's possession were free and clear of any claim or lien by any third party.

---

[1]  MVCC alleges that Ms. Looser signed the document without any authority to act in a representative capacity for MVCC.

In response, MDECD sought leave to intervene in this adversary proceeding, which the bankruptcy court allowed. After MDECD intervened, Prudential filed a counterclaim in the nature of an interpleader against MVCC and named MDECD as a third-party defendant to the adversary proceeding. MVCC then filed a cross-claim against MDECD, alleging that MDECD had no interest in the assets held by Prudential.

After its intervention, MDECD moved to dismiss the proceeding based on a claim of Eleventh Amendment immunity. MDECD's motion focused mainly on establishing the unconstitutionality of § 106 of the Bankruptcy Code, 11 U.S.C. § 106, in which Congress purported to abrogate the sovereign immunity of states and state agencies which file claims in bankruptcy proceedings. The district court, relying on In re Estate of Fernandez, 123 F.3d 241 (5th Cir. 1997), agreed with MDECD that § 106 violated the Eleventh Amendment and was ineffectual as a waiver of sovereign immunity. However, the district court further found that MDECD had waived its Eleventh Amendment immunity through a venue clause in the Pledge Agreement, and, therefore, denied MDECD's Motion to Dismiss. MDECD now appeals that ruling.

II.

A.

In Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 113 S. Ct. 684 (1993), the Supreme Court held that "States and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment

4

immunity." Id. at 147, 113 S. Ct. at 689. Thus, we have appellate jurisdiction to review the district court's interlocutory order denying MDECD's Motion to Dismiss based on the Eleventh Amendment. See also Earles v. State Bd. of Certified Pub. Accountants, 139 F.3d 1033, 1036 (5th Cir. 1998).

B.

In this appeal, we focus on whether the district court correctly denied MDECD's Motion to Dismiss based on Eleventh Amendment immunity. The district court concluded that MDECD was entitled to assert Eleventh Amendment immunity, but that MDECD had waived such immunity by virtue of a provision in the Pledge Agreement that provided as follows:

> Section 6.03 Applicable Law. This Pledge shall be deemed to have been made and to be performed in Jackson, Hinds County, Mississippi, and shall be governed by and construed in accordance with the laws of the State of Mississippi. Courts within the State of Mississippi shall have jurisdiction over any and all disputes between the parties to this Pledge, whether in law or in equity, including but not limited to, all disputes arising out of or relating to this Pledge. Venue in any such dispute, *whether in federal or state court*, shall be laid in Hinds County, Mississippi.

(Emphasis added).

On appeal, MDECD makes a two-pronged argument. MDECD argues first that the above language of the venue provision does not clearly waive its Eleventh Amendment immunity. Second, MDECD argues that even if the venue provision is construed as waiving Eleventh Amendment immunity, MDECD had no authority to waive this important right.

The district court, in rejecting both of MDECD's arguments, held that the language of the venue provision was sufficiently

5

clear to amount to a waiver of Eleventh Amendment immunity.  The district court also rejected MDECD's argument that it had no authority to waive Eleventh Amendment immunity.  The district court reasoned that Mississippi, by authorizing MDECD to enter into a contract in which MDECD waived its Eleventh Amendment immunity, must be considered as authorizing that waiver.

III.

A.

Assuming without deciding that the language in the venue provision of the Pledge Agreement reflects a clear waiver of Eleventh Amendment immunity, we are satisfied that MVCC has not demonstrated that the state agency, MDECD, was authorized to waive Mississippi's important right of immunity from suit in federal court.

In concluding that MDECD was authorized to waive Mississippi's Eleventh Amendment immunity, the district court reasoned as follows:  first, the court correctly concluded that under clear Mississippi Supreme Court authority, "sovereign immunity does not bar action against the State or its political subdivisions brought on a breach of contract theory."  Trammell v. State, 622 So. 2d 1257, 1262 (Miss. 1993).  The district court observed that this principle is based on the notion that "[w]here the state has lawfully entered into a business contract with an individual, the obligations and duties of the contract should be mutually binding and reciprocal.  There is no mutuality or fairness where a state or county can enter into an advantageous contract and accept its benefits but refuse to perform its obligations."  Churchill v.

6

Pearl River Basin Dev. Dist., 619 So. 2d 900, 903 (Miss. 1993).

The district court reasoned next that because the venue provision waived the state's Eleventh Amendment immunity, "there would be 'no mutuality or fairness' in allowing the Department to assert the Pledge Agreement in support of its claim to the funds in question and yet at the same time permit it to avoid challenges to the validity of the agreement or the correctness of the Department's claim to an interest predicated on that agreement." Thus, based on this reasoning, the district court concluded that Mississippi also waived its Eleventh Amendment immunity defense by giving general authority to MDECD to enter into contracts, and the specific contract at issue included an Eleventh Amendment waiver.

The district court correctly recognized that under Mississippi law, when the legislature authorizes a state agency to enter into a contract, the state waives its immunity from suit for a breach of that contract. See, e.g., Grant v. State, 686 So. 2d 1078, 1091-92 (Miss. 1996); Trammell v. State, 622 So. 2d 1257, 1261-62 (Miss. 1993); Churchill v. Pearl River Basin Dev. Dist., 619 So. 2d 900, 903 (Miss. 1993); Mississippi State Dept. of Public Welfare v. Howie, 449 So. 2d 772, 777 (Miss. 1984). This rule is based on mutuality and fairness. Mississippi State Dept. of Public Welfare, 449 So. 2d at 777. That principle is not in dispute. The issue before us narrows to whether the district court correctly extended Mississippi's rule on waiver of common law sovereign immunity to encompass Mississippi's waiver of its Eleventh Amendment immunity where the state authorized an agency to enter into a contract, and that contract included a waiver of Eleventh Amendment immunity. We

7

are persuaded that important federalism concerns that underlie the Eleventh Amendment will not permit this extension.[2]

B.

The doctrine of sovereign immunity embodies the maxim that "the King can do no wrong," and can be traced back to ancient times.[3] Sovereign immunity, as it has been interpreted in the federal courts, actually encompasses two separate, but related, concepts--state sovereign immunity, or common law sovereign immunity, and Eleventh Amendment immunity, or constitutional sovereign immunity. 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3524, at 171 (2d ed. 1984).[4] These immunities shield the sovereign, or the state, from suits against it in its own courts as well as from suits against it in federal courts.

A state's immunity, however, is not absolute. For example, a state may choose to waive its immunity, thus consenting to suit.[5] However, it is important to keep in mind that a state may waive its

---

[2] See, e.g., Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304-06, 110 S. Ct. 1868, 1872-73 (1990); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100 & n.9, 104 S. Ct. 900, 907-08 & n.9 (1984).

[3] See generally 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 123 App.01 (3d ed. 1998).

[4] See also Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122 (1996) ("'[W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms.' That presupposition, first observed over a century ago in Hans v. Louisiana, has two parts: first, that each State is a sovereign entity in our federal system; and second, that 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'") (internal citations omitted); In re Allied-Signal, Inc., 919 F.2d 277, 280 n.4 (5th Cir. 1990).

[5] See generally 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 123.21 (3d ed. 1998).

8

common law sovereign immunity without waiving its Eleventh Amendment immunity under federal law. Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 306, 110 S. Ct. 1868, 1873 (1990); see also In re Allied Signal, Inc., 919 F.2d 277, 280 n.4 (5th Cir. 1990). Thus, a state may consent to being sued in its own courts, while still retaining Eleventh Amendment immunity from suit in federal court. See, e.g., Florida Dept. of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 150, 101 S. Ct. 1032, 1034 (1981) (state's general waiver of sovereign immunity did not constitute waiver by state of Eleventh Amendment immunity); Great N. Life Ins. Co. v. Read, 322 U.S. 47, 54-55, 64 S. Ct. 873, 877 (1944) (same); Sherwinski v. Peterson, 98 F.3d 849, 851-52 (5th Cir. 1996) (same).

The Supreme Court has made it clear that we may find a waiver of a state's Eleventh Amendment immunity in only the most exacting circumstances. "[T]he State's consent [to suit in federal court must] be unequivocally expressed." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S. Ct. 900, 907 (1984); see also Port Authority Trans-Hudson Corp., 495 U.S. at 305, 110 S. Ct. at 1873 ("The Court will give effect to a State's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction."). A clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found. Pennhurst State Sch. & Hosp., 465 U.S. at 99 n.9, 104 S. Ct. at 907 n.9. As the Supreme Court has stated, the "reluctance to infer

9

that a State's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system." <u>Pennhurst State Sch. & Hosp.</u>, 465 U.S. at 99, 104 S. Ct. at 907; <u>see also</u> <u>Port Authority Trans-Hudson Corp.</u>, 495 U.S. at 304-06, 110 S. Ct. at 1872-73. Additionally, the state's waiver must be accomplished by someone to whom that power is granted under state law. <u>Ford Motor Co. v. Department of Treasury</u>, 323 U.S. 459, 467, 65 S. Ct. 347, 352 (1945); <u>see also</u> <u>Dagnall v. Gegenheimer</u>, 631 F.2d 1195, 1196 (5th Cir. 1980).

With this background, we now consider the precise issue presented in this case: whether the district court erred in concluding that MDECD had authority to waive Mississippi's Eleventh Amendment immunity from suit in federal court.[6]

C.

In determining whether a state official or entity has authority to waive Eleventh Amendment immunity, the Supreme Court has directed that we look to the "general policy of the state as expressed in its Constitution, statutes and decisions." <u>Ford Motor Co.</u>, 323 U.S. at 467, 65 S. Ct. at 352; <u>see also</u> <u>Dagnall</u>, 631 F.2d at 1196. This authority must be clearly expressed. In <u>Freimanis</u>

---

[6] As an initial matter, MVCC argues that MDECD is not entitled to raise Eleventh Amendment immunity because MVCC does not seek a money judgment against the state. MVCC therefore contends that Mississippi is not a real party in interest in the suit. As the district court noted in rejecting this argument, "application of the Eleventh Amendment is not limited to those cases in which a money judgment is sought against a state." <u>See, e.g.</u>, <u>Cory v. White</u>, 457 U.S. 85, 102 S. Ct. 2325 (1982). Additionally, this action involves rights to allegedly public funds claimed by the state. We therefore agree with the district court that MDECD, a state agency, is entitled to assert Eleventh Amendment immunity.

v. Sea-Land Service, Inc., 654 F.2d 1155 (5th Cir. 1981), this Court considered whether the State of Louisiana had waived its Eleventh Amendment immunity when an attorney representing the Louisiana Department of Transportation entered into a consent judgment with the defendant, Sea-Land. In answering this question in the negative, we stated that "[t]he short answer to this contention is that the attorney for the Department had no *clearly expressed* authority to waive Eleventh Amendment immunity. Indeed, Louisiana has clearly expressed its intention to preserve its immunity." Id. at 1160 (emphasis added); see also Santee Sioux Tribe v. Nebraska, 121 F.3d 427, 431 (8th Cir. 1997) ("a state official may waive the state's immunity only where specifically authorized to do so by that state's constitution, statutes, or decisions"); Estate of Porter v. Illinois, 36 F.3d 684, 690 (7th Cir. 1994) ("state officials can only waive a state's Eleventh Amendment immunity if they are specifically authorized to do so by the state's constitution, statutes, or decisions"); Silver v. Baggiano, 804 F.2d 1211, 1214 (11th Cir. 1986) ("waiver of Eleventh Amendment immunity by state officials must be explicitly authorized by the state 'in its Constitution, statutes and decisions'").[7]

---

[7] Indeed, given the recognition of strong federalism concerns and the concomitant strict solicitude federal courts give to a state's purported waiver of Eleventh Amendment immunity, see, e.g., Port Authority Trans-Hudson Corp., 495 U.S. at 305-06, 110 S. Ct. at 1872-73, other circuits have gone so far as to conclude that affirmative acts by state officials did not amount to the state's waiver of Eleventh Amendment immunity where the state official was not specifically authorized to waive the immunity. In Estate of Porter v. Illinois, 36 F.3d 684 (7th Cir. 1994), the Seventh Circuit held that the Illinois Attorney General was not authorized to waive Illinois' Eleventh Amendment immunity, and therefore, could not make a valid waiver of immunity by removing the case to federal court. Id. at 691; see also Silver v. Baggiano, 804 F.2d

11

As noted above, the district court was entirely correct in concluding that Mississippi law is clear that when the legislature authorizes an agency to enter into contracts, the state waives its immunity from suit in state court for a breach of a contract. But none of these cases involved the waiver of Eleventh Amendment immunity and consent to suit in federal court. In other words, while Mississippi may waive immunity from suit in its own courts by authorizing state agencies to enter into contracts, there is no Mississippi law to support the implication that MDECD had the authority to waive Mississippi's Eleventh Amendment immunity.

The authorities discussed above lead us to conclude that a state, through its constitution, statutes, or court decisions, must expressly authorize a state agency or representative to waive the state's Eleventh Amendment immunity. Such authority cannot be implied from the circumstances. Although the district court's conclusion that the state implicitly authorized the waiver of its Eleventh Amendment right has a logical and equitable tug, no Mississippi authority supports this determination. Given the reluctance of courts generally to find a waiver of Eleventh Amendment immunity and the strong general rule that authority to make an effective waiver must be express, we conclude that the

1211, 1214-15 (11th Cir. 1986) (holding removal by state officials of suit containing state law claims not a valid waiver of Eleventh Amendment immunity where officials were not authorized to waive immunity). Similarly, in In re Creative Goldsmiths of Washington, D.C., Inc., 119 F.3d 1140 (4th Cir. 1997), the Fourth Circuit concluded that the State of Maryland's defense on the merits of a suit arising out of a bankruptcy proceeding did not amount to a waiver of Eleventh Amendment immunity because the Maryland Attorney General lacked authority to waive Maryland's Eleventh Amendment immunity. Id. at 1149.

district court erred in determining that MDECD had authority to waive Mississippi's Eleventh Amendment immunity.[8]

Although it is unnecessary to our decision, the parties have called our attention to a recent Mississippi statute that confirms our conclusion that Mississippi did not authorize MDECD to waive the state's Eleventh Amendment immunity.[9]

---

[8] In addition to arguing that MDECD waived its Eleventh Amendment immunity, MVCC also argues that alternative grounds exist to support the district court's denial of MDECD's Motion to Dismiss. See In re Sims, 994 F.2d 210, 214 (5th Cir. 1993) (holding that appellee's arguments in support of a favorable judgment should be included in appellee's answering brief, not in a cross-appeal). MVCC argues, as it did in the district court, that MDECD lacks standing as a party in interest to the adversary proceeding filed by MVCC against Prudential because MDECD is neither a creditor of MVCC, nor does MDECD hold any interest in the property at issue. As we stated above, our appellate jurisdiction is limited to reviewing the district court's denial of Eleventh Amendment immunity. See Puerto Rico Aqueduct and Sewer Auth., 506 U.S. at 144-45; 113 S. Ct. at 688.

[9] On April 17, 1998, Mississippi adopted House Bill No. 1240 regarding the Venture Capital Act of 1994. Specifically, Miss. Code Ann. § 57-77-3, as amended, provides in pertinent part as follows:

Except as provided in Section 57-77-33(7), it is, and has always been, the intent of the Legislature that nothing in this chapter shall be construed to waive the sovereign immunity of the State of Mississippi or the department pursuant to either state law or the Eleventh Amendment to the United States Constitution. It is, and always has been, the intent of the Legislature that no action by the State of Mississippi or by the department, or by any officer or agent of the State of Mississippi or of the department, shall be considered a waiver of the sovereign immunity of the State of Mississippi or the department pursuant to either state law or the Eleventh Amendment to the United States Constitution. It is, and always has been, the intent of the Legislature that the entering into of any contract, loan agreement, pledge agreement, or other instrument by the State of Mississippi or the department shall not be considered a waiver of the sovereign immunity of the State of Mississippi pursuant to either state law or the Eleventh Amendment to the United States Constitution. It is, and always has been, the intent of the Legislature that the sovereign immunity

13

IV.

In summary, because MDECD lacked specific express authorization to waive Mississippi's Eleventh Amendment immunity, the district court erred in denying MDECD's Motion to Dismiss on Eleventh Amendment grounds.  However, because our review is limited to the immunity question, we are unable to resolve the remaining issues in this case and we REMAND it to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

of the State of Mississippi pursuant to either state law or the Eleventh Amendment to the United States Constitution may only be waived by express authorization set forth in an enactment of the Mississippi Legislature.