Janet Lynne GARRIS

v.

**DEPARTMENT OF CORRECTION,**
et al.

No. 3:98CV1951 (AHN).

United States District Court,
D. Connecticut.

March 15, 2001.

William Sylvester Palmieri, Williams & Pattis, New Haven, CT, for Plaintiff.

Loida John–Nicholson, Attorney General's Office, Peregrine Alban Zinn–Rowthorn, Attorney General's Office, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

NEVAS, District Judge.

The plaintiff, Janet Lynne Garris ("Garris"), brings this action against the defendants, the Department of Corrections ("DOC"), State of Connecticut ("State"), David Trapasso ("Trapasso"), Donna Compare ("Compare"), and Sandra Bundy ("Bundy") alleging violations of the equal protection and due process provisions of the federal and Connecticut constitutions, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 ("Title VII"), 42 U.S.C. § 1981A, § 1983, § 1988, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. 46a–60(a)(1), 46a–60(a)(4) and 46a–58a *et seq.*

Now pending before the court is the defendants' motion for judgment on the pleadings [doc. # 21]. For the reasons that follow, the motion is GRANTED in part and DENIED without prejudice to renewal in part.[1]

---

1. This court held oral argument on the motion for judgment on the pleadings on February 28, 2001.

## STANDARD OF REVIEW

A Rule 12(c) motion for judgment on the pleadings is filed after the pleadings are closed in a case where the facts are undisputed and a judgment on the merits is possible merely by considering the pleading's contents. *See Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988). The legal standards governing the court's consideration of a Rule 12(c) motion are the same as those standards governing its consideration of a Rule 12(b)(6) motion to dismiss. *See George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir.1977).

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Still v. DeBuono,* 101 F.3d 888 (2d Cir.1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). In deciding such a motion, consideration is limited to the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

## FACTS

The court accepts the following facts as true for the purposes of this motion for judgment on the pleadings. Garris was employed as a Correctional Counselor with the Department of Corrections, State of Connecticut. (*See* Compl. ¶ 9.) Garris alleges that she was systematically harassed, demeaned and discriminated against on the basis of her race, gender and ethnicity. (*See id.* ¶ 1.) Defendant Bundy was a Deputy Warden employed by the DOC. (*See id.* ¶ 4.) Defendant Trapasso was a Counselor Supervisor employed by the DOC. (*See id.* ¶ 5.) Defendant Compare was a Counselor Supervisor employed by the DOC. (*See id.* ¶ 6.)

Garris alleges that during 1995, Trapasso prepared an evaluation reflecting that her job performance was "unsatisfactory". (*See id.* ¶ 11.) Garris challenged the evaluation and it was subsequently changed to "satisfactory". (*See id.* ¶ 12.) Again, in October, 1996, Garris received another "unsatisfactory" job performance evaluation which was subsequently changed to "satisfactory". (*See id.* ¶ 13.) From this point on, Garris claims that Bundy, Trapasso and Compare continued a campaign of harassment and abuse by issuing her formal and informal warnings and write-ups. (*See id.* ¶ 14.) On or about December 20, 1996, Garris filed an administrative complaint alleging a violation of Title VII with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the Equal Employment Opportunity Commission ("EEOC"). (*See id.* ¶ 19.)

Garris alleges that on August 12, 1997, Trapasso and Compare entered her office, locked the door and prevented her from leaving. (*See id.* ¶ 16.) Garris claims that she was then threatened and harassed for pursuing the grievance procedures available to her. (*See id.* ¶ 17.) Trapasso and Compare allegedly informed Garris that

she would receive another unsatisfactory evaluation and that they would make sure that enough evidence existed to support the false evaluation. (*See id.* ¶ 18.)

On September 25, 1997, Garris was placed on administrative leave by the DOC. (*See id.* ¶ 22.) She claims this was in retaliation for filing a grievance and complaint. (*See id.*) Garris eventually returned to work, yet she claims that the DOC failed to correct the behavior of her supervisors and forced her to accept a position in which she had no training and had diminished opportunity for advancement. (*See id.* ¶ 23.) On July 6, 1998, Garris received a right to sue letter from the EEOC. (*See id.* ¶ 20.)

## DISCUSSION

Garris has not objected to the defendants' motion for judgment on the pleading as to (1) her Title VII claims against individual defendants; (2) her right to recover damages against the individual defendants under 42 U.S.C. § 1981a; (3) her negligent infliction of emotional distress and intentional infliction of emotional distress claims against the DOC; (4) her claims against the State under 42 U.S.C. § 1983; (5) the individual defendants immunity from an award of injunctive relief; and (6) the individual defendants immunity from a claim of negligent infliction of emotional distress. Accordingly, judgment for the defendants is entered on these claims.

The only remaining issues in this motion are (1) the viability of the plaintiff's CFEPA claims against the DOC; (2) the individual defendants' liability under CFEPA; (3) the plaintiff's sexual harassment claim under CFEPA; (4) whether the plaintiff failed to exhaust Title VII and CFEPA administrative remedies; and (5) the viability of the plaintiff's claim for intentional infliction of emotional distress.

### 1. CFEPA Claims—DOC

■ The DOC alleges that Garris's CFEPA claim is barred by the constitutional doctrine of sovereign immunity as outlined by the Eleventh Amendment of the United States Constitution because the state has not unequivocally expressed its consent to be sued in federal court. Garris responds that the definition of the term "employer" within Conn. Gen.Stat. § 46a–51(10) includes the "state and political subdivisions" and that, by definition, the DOC is an "employer" and has consented to suit in federal court.

■ The Eleventh Amendment to the United States Constitution bars a suit in federal court against a state or one of its agencies for either legal or equitable relief unless the state explicitly consents to suit or Congress explicitly abrogated state immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Gaynor v. Martin*, 77 F.Supp.2d 272, 281 (D.Conn.1999); *Northrup v. CHRO*, No. 3:98cv211(DJS), 1998 WL 118145, 1998 U.S. Dist. LEXIS 3111 (D.Conn. Feb. 2, 1998); *Dube v. State Univ. of New York*, 900 F.2d 587, 594–95 (2d Cir.1990). The DOC is a state agency entitled to the protection of the Eleventh Amendment. *See Cates v. State of Connecticut*, No. 3:98cv2232(SRU), 2000 WL 502622, slip op. at 12 (D.Conn. April 13, 2000).

■ A state's common law sovereign immunity and a state's immunity from suit in federal court under the Eleventh Amendment are separate, but related concepts. *See e.g., Magnolia Venture Capital Corp. v. Prudential Securities, Inc.*, 151 F.3d 439, 443 (5th Cir.1998) ("Sovereign immunity, as it has been interpreted in the federal courts, actually encompasses two separate, but related, concepts—state sovereign immunity, or common law sovereign

187

immunity, and Eleventh Amendment immunity, or constitutional sovereign immunity.") Thus, "it is important to keep in mind that a state may waive its common law sovereign immunity without waiving its Eleventh Amendment immunity under federal law." *Magnolia*, 151 F.3d at 443, *citing Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 306, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990); *In re Allied–Signal, Inc.*, 919 F.2d 277, 280 n. 4 (5th Cir.1990). A state may consent to being sued in its own courts, while still retaining Eleventh Amendment immunity from suit in federal court. *Magnolia*, 151 F.3d at 443 (*citing Florida Dept. of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132, (1981)) (state's general waiver of sovereign immunity did not constitute waiver by the state of Eleventh Amendment immunity); *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54–55, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) (same); *Sherwinski v. Peterson*, 98 F.3d 849, 851–52 (5th Cir.1996) (same).

▮ The Supreme Court has clearly held that a district court may find a waiver of the state's Eleventh Amendment immunity in only the most exacting circumstances. "[T]he State's consent [to suit in federal court must] be unequivocally expressed." *Pennhurst*, 465 U.S. at 99, 104 S.Ct. 900; *see also Port Auth. Trans–Hudson Corp.*, 495 U.S. at 305, 110 S.Ct. 1868 ("The Court will give effect to a State's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction"). A clear declaration of a state's intent to submit to matters in a court, other than one of its own creation, must be found. *Pennhurst*, 465 U.S. at 99 n. 9, 104 S.Ct. 900.

Here, although Garris may be correct that the State waived its common-law sovereign immunity for CFEPA claims by the express statutory language of Conn. Gen. Stat. § 46a–51(10), there is nothing in the Connecticut Statutes that constitutes an express waiver of Eleventh Amendment immunity for CFEPA claims. Absent an "unequivocal expression" or "clear declaration" of consent to defend CFEPA suits in federal court, the court may not find such a waiver of Eleventh Amendment immunity.

2. *Individual Liability Under CFEPA.*

Garris alleges that the individual defendants are liable under CFEPA, Conn. Gen. Stat. §§ 46a–60(a)(1)—46a–60(a)(8). The defendants maintain that these statutes apply to employers and do not impose personal liability on supervisory employees. The Connecticut Supreme Court accepted this question of law on January 25, 2001, as certified by this court in *Perodeau v. City of Hartford*, 3:99cv00807(AHN). Thus, the motion raising this issue is denied without prejudice to renewal.

3. *Sexual Harassment Claim Under CFEPA*

▮ The defendants allege that Garris has failed to state a claim for sexual harassment under Conn. Gen.Stat. § 46a–60(8) because her complaint does not allege any facts in support of her claim. Garris responds that the complaint asserts a general claim of "harassment".

▮ In evaluating state anti-discrimination statutes, Connecticut state courts look to federal case law interpreting Title VII of the Civil Rights Act of 1964. *See State v. Comm'n on Human Rights & Opportunities*, 211 Conn. 464, 469–70, 559 A.2d 1120 (1989). Generally, a claim of sexual harassment under federal law has proceeded "on one of two theories: (1)

quid pro quo—e.g., favorable treatment in return for sought sexual favors—or (2) hostile work environment." *Gallagher v. Delaney,* 139 F.3d 338, 346 (2d Cir.1998). In order to establish a quid pro quo harassment claim, the plaintiff must make a showing of a causal relationship between the refusal of a supervisor's sexual advances and an adverse employment decision. *See Burlington Indus. v. Ellerth,* 524 U.S. 742, 753–54, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *see also Smith v. Unity Funeral Chapels,* No. 2000 WL 1678775, *1, 234 F.3d 1263 (2d Cir. Nov. 8, 2000). In order to establish a hostile work environment, "the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). "In order to be actionable ... a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal quotation marks omitted). "[W]hether an environment is sufficiently hostile or abusive [is determined] by looking at all the circumstances...." *Id.*

Here, Garris has alleged no facts in her complaint which support a quid pro quo claim of sexual harassment or a hostile work environment claim. Garris merely asserts in her reply memorandum that the defendants are aware of a prior claim for sexual harassment. However, Garris sets forth no facts regarding this prior incident either in the complaint or her opposition papers.

As previously stated, the court applies the same standard for a motion for judgment on the pleadings as a motion to dismiss. *See George C. Frey Ready-Mixed Concrete, Inc.,* 554 F.2d at 553. In deciding a motion to dismiss, consideration is limited to the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Based upon the conclusory nature of the complaint and the failure to plead any facts regarding sexual harassment, Garris has failed to state a claim for sexual harassment pursuant to Conn. Gen.Stat. § 46a–60(8).

### 4. *Failure to Exhaust Title VII and CFEPA Administrative Remedies*

■■ The defendants allege that Garris has not exhausted her administrative remedies as to two claims: (1) the "office invasion" incident where Trapasso and Compare allegedly "invaded" Garris's office, locked the door and "threatened and harassed the plaintiff for properly pursuing grievance procedures" and (2) her dissatisfaction with her reassignment upon returning from administrative leave. Garris responds that the acts alleged in the complaint are reasonably related to the acts presented to the CCHRO within the administrative forum.

■■ Before a plaintiff may file a Title VII claim in federal court, the party must exhaust its administrative remedies by timely filing a complaint with the EEOC and obtaining a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(e) and (f); *Shah v. New York State Dep't Of Civ. Serv.,* 168 F.3d 610, 613–14 (2d Cir.1999). This requirement puts the employer on notice of alleged discriminatory practices and encourages mediation and remedial action. *Id.* at 614; *see also Johnson v. New York*

*City Bd. of Educ.,* No. CV 96–4472(NNG), 2000 WL 1739308, *4, 2000 U.S. Dist. LEXIS 17410, *12 (Dec. 7, 2000, E.D.N.Y.). In order for a plaintiff to raise claims not specifically alleged in a complaint to the EEOC, the new claim must be "reasonably related" to those reviewed by the EEOC. *Id.* One of the reasons behind this rule allowing new claims to be raised in federal court that have not been presented to the EEOC is based upon the notion of "leniency" and "fairness" to the plaintiff. *See Butts v. City of New York Dep't of Hous. Preservation & Dev.,* 990 F.2d 1397, 1402 (2d Cir.1993) ("recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff believes she is suffering"). However, "federal courts generally have no jurisdiction to hear claims not alleged in an employee's EEOC charge." *Shah v. New York State Dep't Of Civ. Serv.,* 168 F.3d at 613; *see also Brown v. Coach Stores, Inc.,* 163 F.3d 706, 712 (2d Cir. 1998).

Here, Garris has failed to exhaust her administrative remedies as to the "office invasion" incident and the job reassignment she received upon returning from administrative leave as these alleged incidents were never properly raised with the CCHRO and are not reasonably related to the claims made to the CCHRO. The CCHRO maintained jurisdiction over Garris's complaint up to one year after the alleged "office invasion" had occurred, and yet, Garris never amended her complaint to include this incident. Garris was familiar with the process of amending her CCHRO complaint as she had done it previously, however, she never informed the CCHRO of this incident. In addition, the alleged job reassignment also occurred three months prior to the CCHRO losing jurisdiction over the matter. Again, Garris failed to amend her CCHRO complaint to include this claim. Based upon Garris's failure to exhaust her administrative remedies before the CCHRO, this court does not have jurisdiction over the "office invasion" and job reassignment claims and finds that they are not reasonably related to the claims alleged in the complaint.

5. *Failure to State a Claim For Intentional Infliction of Emotional Distress*

 The defendants allege that Garris has failed to identify with particularity the conduct which forms the basis of her claim for intentional infliction of emotional distress. Garris responds that the acts alleged in the complaint constitute extreme and outrageous behavior.

 In order to prevail on a claim for intentional infliction of emotional distress the plaintiff must allege that: (1) the defendant intended or knew that emotional distress would likely result from its conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused plaintiff distress; and (4) plaintiff's distress was severe. *See Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). The disputed conduct must exceed all bounds tolerated by decent society, and cannot be merely rude, tactless or insulting. *See Petyan,* 200 Conn. at 254, 510 A.2d 1337 (1986).[2] Whether a defendant's conduct is sufficient to satisfy the require-

---

**2.** "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965).

ment that it be extreme and outrageous is initially a question for the court to determine. *See Johnson v. Chesebrough–Pond's USA Co.*, 918 F.Supp. 543, 552 (D.Conn.1996); *see also Bell v. Board of Education*, 55 Conn.App. 400, 410, 739 A.2d 321 (1999). Only where reasonable minds disagree does it become an issue for the jury. *Bell* at 55 Conn.App. at 410, 739 A.2d 321. (1999). There is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action as the court must look to the specific facts and circumstances of each case in making its decisions. *Rhonda Craddock v. Church Community Supported Living Association*, No. 990592711S, 2000 WL 33159150, 2000 Conn.Super. LEXIS 3008 (Conn.Super.Ct. Nov. 13, 2000).

Here, Garris has not alleged facts which satisfy the requisite standard of extreme and outrageous conduct. The average member of the community would not find the defendants' actions of entering Garris's office and locking the door to be extreme and outrageous. *See Armstrong v. Chrysler Fin. Corp.*, 1998 U.S. Dist. LEXIS 9357, 1998 WL 342045 (D.Conn. May 14, 1998) (referring to an employee as "you-who" and Elois, criticizing, insulting and demeaning her on a daily basis, taking away her authority, declaring her incompetent, and demeaning her professional ability in front of supervisors does not meet the required threshold of outrageousness)

Here, Garris's complaint fails to present facts which satisfy the extreme and outrageous standard required to prove a claim of intentional infliction of emotional distress.

## CONCLUSION

Based on the foregoing analysis, the defendants' motion for judgment on the pleadings [doc. # 21] is GRANTED in part and DENIED without prejudice to renewal in part. The Clerk is ordered to enter judgment in favor of the defendants as to (1) her Title VII claims against individual defendants; (2) her right to recover damages against the individual defendants under 42 U.S.C. § 1981a; (3) her negligent infliction of emotional distress and intentional infliction of emotional distress claims against the DOC; (4) her claims against the State under 42 U.S.C. § 1983; (5) the individual defendants immunity from an award of injunctive relief; (6) the individual defendants immunity from a claim of negligent infliction of emotional distress; (7) her CFEPA claims against the DOC; (8) her sexual harassment claim under CFEPA; (9) her failure to exhaust Title VII and CFEPA administrative remedies; and (10) her claim for intentional infliction of emotional distress. The defendants' motion for judgment as to individual liability under CFEPA is denied without prejudice to renewal.