AT & T COMMUNICATIONS OF THE
SOUTH CENTRAL STATES, INC.

v.

BELLSOUTH
TELECOMMUNICATIONS, INC., et al.

AT & T Communications of the
South Central States, Inc.

v.

BellSouth Telecommunications,
Inc., et al.

American Communication Services
of Louisiana, Inc., et al.

v.

BellSouth Telecommunications,
Inc., et al.

Civil Action Nos. 97–1136–A,
97–1137–A, 98–105–A.

United States District Court,
M.D. Louisiana.

March 29, 1999.

David L. Guerry, Michael A. Patterson, Jennifer J. Vosburg, Long Law Firm, Baton Rouge, Louisiana, Michael D. Warden, David L. Lawson, Sidley & Austin, Washington, DC, for AT & T Communications.

R. Patrick Vance, Edward H. Bergin, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, Louisiana, Michael K. Kellogg, Sean A. Lev, Kellogg, Huber, Hansen, Todd & Evans, PLLC, Washington, DC, for BellSouth Telecommunications, Inc.

Neil T. Erwin, Wiener, Weiss & Madison, APC, Shreveport, Louisiana, Brian Andrew Eddington, McCollister & McCleary, Baton Rouge, Louisiana, for Louisiana Public Service, Service Commission, Don Owen, Irma Muse Dixon, Dale Sittig, James M. Field, Jack A. Blossman.

Alicia Reggie Freysinger, New Orleans, Louisiana, for American Communication Services of Louisiana, Inc., American Communication Services of Baton Rouge, Inc., and American Communication Services of Shreveport, Inc.

John Anthony Dunlap, Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, New Orleans, LA, John B. Dunlap, III, Simoneaux, Ryan, Carleton & Dunlap, Baton Rouge, LA, for Sprint Communications Company, L.P.

## RULING ON SUBJECT MATTER JURISDICTION

PARKER, District Judge.

This consolidated matter is before the court, *sua sponte*, to consider whether the State of Louisiana through the Public Service Commission is entitled to Eleventh Amendment immunity. All parties have been directed to brief the issue. The defendants, the Louisiana Public Service Commission ("Public Service Commission") and its members, argue that they are immune from suit under the Eleventh Amendment and this court is without jurisdiction to hear this case. The remaining defendant, BellSouth Central States, Inc., ("BellSouth") and the consolidated plaintiffs, AT & T Communications of the South Central State, Inc., ("AT & T"), American Communications Services of Louisiana, Inc., American Communications Services of Baton Rouge, Inc., and American Communications Services of Shreveport, Inc. (presently known as e.spire) ("e.spire") have filed memoranda in opposition.[1] Jurisdiction is allegedly based on 28 U.S.C. § 1331, as it relates to the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56, (codified in scattered sections of 47 U.S.C.A (West Supp.1997)).

## I. BACKGROUND

### A. The Telecommunications Act

In 1996, the Congress enacted the Telecommunications Act ("the 1996 Act"). The 1996 Act was intended to dissolve monopolies granted by the states to local telephone companies and open the market for competition.[2] Prior to the 1996 Act, the existing local telephone companies (referred to by the parties as "local exchange carriers") were regulated by the states. Louisiana regulated its local exchange carrier through the Public Service Commission.

The Congress recognized that simply removing regulatory restrictions on competition would not eliminate the economic barriers which blocked entry into the telephone markets. Therefore, in order for the 1996 Act to fulfill its purpose and to ensure that new telephone companies entered the market quickly, the Congress required all local exchange carriers to share their networks with competitors.[3] Entrants could either interconnect with the local exchange carriers' network, lease elements of existing local networks at reasonable rates, or purchase the local exchange carriers' services at wholesale rates and sell them to customers.[4]

To ensure that local exchange carriers would be fairly compensated, the Congress

---

1. Sprint Communications Company, although not a party, has filed an *amicus curaie* opposition to Eleventh Amendment immunity.

2. The Telecommunications Act of 1996 was designed "[t]o promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications' consumers and encourage the rapid development of new telecommunications technologies" Pub.L. No. 104–104, 110 Stat. 56, 56 (1996).

3. See 47 U.S.C. § 251.

4. See 47 U.S.C. § 251(c).

required that the new companies and the local exchange carriers reach a reasonable and fair interconnection agreement. The process, which is set out in 47 U.S.C. § 252, requires that new companies and local exchange carriers first try to reach voluntary interconnection agreements.[5] During negotiations, either party may request that the appropriate state commission act as a mediator.[6] If the parties are unable to negotiate, 47 U.S.C. § 252(b) requires that the parties submit the issues to compulsory arbitration. Section 252 and the Federal Communications Commission regulations set forth certain standards that must be followed by the state commission during these arbitration proceedings.

Without regard to whether the agreement was negotiated or arbitrated, the 1996 Act requires that the agreement be approved by the state commission. Subsection 252(e) provides guidelines for the acceptance or rejection of an interconnection agreement. If the parties submit to mediation or arbitration and the "state fails to act", the FCC is given the power under the act to preempt the commission's jurisdiction and to assume the state commission's responsibilities.[7] However, if a state fails to approve or reject an agreement within a reasonable time, then the agreement is deemed approved.[8] Finally, and this is the problem, 47 U.S.C. § 252(e)(6) states that "any party aggrieved by [a state commission's] determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 and this section".

In addition to the negotiation of an interconnection agreement, a local exchange carrier that is a Bell Operating Company, such as BellSouth, is required to submit to the state commission for approval a State-

ment of Generally Available Terms ("Statement").[9] The statement must contain "terms and conditions that such company generally offers within that State to comply with the requirement of section 251 of [the Act] and the regulations thereunder and standards applicable under [Section 252]".[10]

## B.  Procedural History

The plaintiffs in this consolidated matter, AT & T and e.spire, are trying to enter the telephone market in which Bell-South is the incumbent local exchange carrier. In compliance with the procedures set forth under the 1996 Act, the plaintiffs attempted to negotiate a voluntary interconnection agreement with Bell-South. After negotiations were unsuccessful, plaintiffs petitioned the Public Service Commission for compulsory arbitration. After arbitration was conducted, the agreement was submitted to the Public Service Commission for approval. Additionally, on October 22, 1997, the Public Service Commission approved BellSouth's Statement of Generally Available Terms ("BellSouth's Statement").

Both AT & T and e.spire contend that certain terms of BellSouth's Statement and their respective interconnection agreements with BellSouth do not meet the requirements of the 1996 Act. Pursuant to Section 252(e)(6), AT & T and e.spire have brought these actions seeking judicial review of both the statement and their respective agreements.

After suits were filed in this court, they were consolidated and the magistrate judge, pursuant to a scheduling order, directed that the parties submit the case on briefs. After briefs had been submitted by the parties, this court noticed that although the Public Service Commission had

---

5.  See 47 U.S.C. § 252(a)(1).

6.  See 47 U.S.C. § 252(a)(2).

7.  See 47 U.S.C. § 252(e)(5).

8.  See 47 U.S.C. § 252(e)(4).

9.  See 47 U.S.C. § 252(f).

10.  47 U.S.C. § 252(f)(1).

been named as a party, none of the parties discussed the Public Service Commission's immunity from suit in federal court under the Eleventh Amendment. Therefore, by notice to counsel, the court directed the parties to brief the issue.

## II. THE ELEVENTH AMENDMENT

The court has carefully considered all briefs submitted by the parties on this jurisdictional issue and, for reasons which follow, ultimately concludes that the Congress lacks the constitutional power to waive the immunity of the State of Louisiana from suit in federal court by private parties, which immunity is bestowed upon the states by the Eleventh Amendment. Accordingly, the court concludes that the attempted waiver of such sovereign immunity by the Telecommunications Act of 1996 is invalid and that the court lacks jurisdiction.

The Eleventh Amendment to the Constitution states:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." [11]

Note that the Amendment does not simply read that states are immune from suit; it declares that the judicial power of the United States "shall not be construed to extend" to any such suit. Neither does

the Amendment contain any grant of authority to the Congress to waive its provisions or to apply federal judicial power to the states. Thus, we begin with a clear understanding that if the Congress possesses such power it must be found elsewhere than the Eleventh Amendment.

State immunity under the Eleventh Amendment extends to state agencies such as the Public Service Commission. [12]

While text of the Eleventh Amendment speaks only of suits by citizens of other states, it has been consistently construed to apply to suits against a state by its own citizens and suits against a state based upon federal questions [13]. Eleventh Amendment immunity has not been absolute; the Supreme Court has held. that a state's Eleventh Amendment protection can be circumvented if the Congress properly abrogates immunity [14] or if a state waives its immunity and consents to suit in federal court. [15] A third route for a party to obtain relief against a state agency in federal court is the so-called *Ex Parte Young* [16] "exception" to the Eleventh Amendment, although in nominal form the rule is not an "exception" because the citizen's suit is not against the state itself, but rather it is a suit against a state official. [17]

In 1996, the Supreme Court rendered its decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996), which breaths new life into the Eleventh Amendment. The *Seminole Tribe* decision places severe limitations on a party's ability to

---

11. U.S. Const. amend. XI.

12. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993); *Florida Dept. of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 149–50, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981).

13. *Hans v. Louisiana*, 134 U.S. 1, 18–19, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

14. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985).

15. *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984)).

16. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

17. *Ex Parte Young*, 209 U.S. 123, 158–159, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

bypass a state's immunity from suit in federal court. The decision restricts the power of the Congress to abrogate state immunity.[18] The decision also narrows the scope of the *Ex Parte Young* exception as to Eleventh Amendment immunity.[19] Lastly, *Seminole Tribe* left open for debate whether a state may impliedly waive its immunity to suit in federal court.

The Public Service Commission, in its brief on Eleventh Amendment immunity, argues that the Eleventh Amendment bars suit against it in federal court. It claims that it did not, and under *Seminole Tribe*, could not constructively waive its Eleventh Amendment immunity. It also argues that *Ex Parte Young* is inapplicable because the 1996 Act spells out remedial measures which do not include suit against state officials for prospective relief. The Public Service Commission claims that since it is immune from suit in this court, the appropriate remedy in this case is dismissal of the consolidated actions for lack of subject matter jurisdiction.

The plaintiffs, AT & T and e.spire, and the defendant, BellSouth, (collectively "the telephone companies") have each submitted briefs in opposition to the Public Service Commission's immunity argument under the Eleventh Amendment.[20] The telephone companies claim that the Public Service Commission's actions in conducting arbitration and approving the BellSouth Statement and the interconnection agreements constitute an implied waiver of the Public Service Commission's immunity. Additionally, it argues that this action is for declaratory and injunctive relief against state officials, not for a money judgment against the state itself, and therefore, this court has jurisdiction under *Ex Parte Young*. In the alternative, AT & T argues that it is simply seeking appellate-style judicial review of the record in federal court. Therefore,

AT & T argues it is not a suit against the state under the Eleventh Amendment.

## A. Abrogation

It is important to understand precisely what issues are presented here, as well as what issues were resolved by *Seminole Tribe*. There the Court carefully set forth the two questions before it and its answers to those questions:

> ... (1) Does the Eleventh Amendment prevent Congress from authorizing suits by Indian tribes against States for prospective injunctive relief to enforce legislation enacted pursuant to the Indian Commerce Clause?; and (2) Does the doctrine of *Ex parte Young* permit suits against a State's governor for prospective injunctive relief to enforce the good faith bargaining requirement of the Act? We answer the first question in the affirmative, the second in the negative, .... 116 S.Ct. at 1122.

In reaching its decision, the Court specifically overruled *Pennsylvania v. Union Gas Company*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), in which, a plurality of the Court had found congressional power to abrogate immunity from suit against the states in federal court in the Commerce Clause of Article I of the Constitution. "We feel bound to conclude that *Union Gas* was wrongly decided and that it should be, and now is, overruled." *Id.* 116 S.Ct. at 1129.

Noting that the Fourteenth Amendment was adopted well after ratification of the Constitution and adoption of the Eleventh Amendment, the Court pointed out that the Fourteenth Amendment "operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment". The Court concluded its discussion of the issue by declaring:

**18.** *Seminole Tribe*, 517 U.S. at 44, 116 S.Ct. at 1131–32.

**19.** *Id.* at 75, 116 S.Ct. at 1133.

**20.** Sprint has also submitted an *amicus curiae* brief which raises identical issues as those of the other telephone companies.

... [w]e reconfirm that the background principle of state sovereign immunity embodied in the Eleventh Amendment is not so ephemeral as to dissipate when the subject of the suit is an area, like the regulation of Indian commerce, that is under the exclusive control of the Federal Government. Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.... Id., at 131, 28 S.Ct. 441.

The Court also gave short shrift to the Tribe's argument that because it sought only injunctive relief, not a money judgment, its suit against the State of Florida could proceed under the *Ex parte Young* doctrine. Because the Congress had carefully spelled out statutory relief in the statute itself, "a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young.*" *Id.* 116 S.Ct. at 1132.

Thus, from the decision in *Seminole Tribe,* several matters are made clear.

■ The Congress cannot abrogate a state's immunity under the Eleventh Amendment unless it:(1) "unequivocally expresse[s] its intent to abrogate the immunity"; and (2) acts "pursuant to a valid exercise of power."[21] Prior to *Seminole Tribe,* the Supreme Court had found the congressional authority to abrogate a state's sovereign immunity only under the Fourteenth Amendment,[22] and the Interstate Commerce Clause.[23] However, when *Seminole Tribe* overruled *Union Gas,* it unequivocally stated that the Commerce Clause is not a valid constitutional source for abrogation of state immunity under the Eleventh Amendment.[24] In the wake of *Seminole Tribe,* congressional power to abrogate is limited to acts adopted under the Fourteenth Amendment which specifically grants to the Congress "power to enforce, by appropriate legislation, the provisions of this article."

■ Clearly, the Commerce Clause is the source of congressional power which was relied upon to enact the Telecommunications Act of 1996 presently before this court. Section 252(e)(6) of the law authorizes any party aggrieved by the decision of a state commission to "bring an action in an appropriate Federal district court." Plaintiffs argue and the court agrees that the intent of that section is to waive state immunity from suit in federal court as to actions brought under that Act. Because the Supreme Court has clearly spelled out that the Commerce Clause grants no such power to the Congress, it is apparent that it has exceeded its constitutional authority and that the waiver of immunity from suit contained in the statute is invalid.

## B. Waiver of Immunity

■ Despite the language in the text prohibiting application of federal judicial power to such suits, the Supreme Court has long acknowledged that the Eleventh Amendment is subject to waiver. The test for determining whether a state has waived the protection of the Eleventh Amendment against suit in federal court is a stringent one.[25] A federal court should find a waiver of Eleventh Amendment immunity only when the waiver is stated "by the most express language or by such

21. *Id.* at 74, 116 S.Ct. at 1132.

22. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

23. *Pennsylvania v. Union Gas Company,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989)

24. *Id.* at 74, 116 S.Ct. at 1132.

25. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146–47, 87 L.Ed.2d 171 (1985).

overwhelming implication from the text as [will] leave no room for any other reasonable construction." [26]

■ A state, by statute or constitution, may expressly "specify [its] intention to subject itself to suit in federal court".[27] Louisiana has not statutorily or constitutionally waived its immunity from suit under the Eleventh Amendment. Indeed, her statutes are to the contrary.[28] There is no Louisiana statute which allows a state agency such as the Public Service Commission, to waive sovereign immunity from suit. The conclusion is thus unmistakable that that agency has not expressly waived immunity.

Plaintiffs, however, suggest that the Public Service Commission by its actions in this matter has impliedly waived immunity. Although this court has difficulty understanding how an unconstitutional statutory waiver can serve as the predicate for an implied waiver, the issue will be discussed nevertheless.

Prior to *Seminole Tribe*, the Supreme Court allowed a party to pierce a state's Eleventh Amendment immunity by claiming that a state impliedly or constructively waived it. The plaintiff was required to show that (1) a federal statute expressed in "unmistakable clear language" congres-

sional intent to permit suits against the state in federal court and (2) the state voluntarily undertook non-sovereign activities regulated by the federal government.[29] Wavier of Eleventh Amendment immunity is a constitutional right, and because it is such, constructive waiver should not be taken lightly.[30] Constructive waiver has been found only where there exists an "unequivocal indication that the state intend[ed] to consent to federal jurisdiction that would otherwise be barred by the Eleventh Amendment." [31] In the aftermath of the *Seminole Tribe* decision, the federal circuit courts are split as to whether the doctrine of implied or constructive waiver has survived.[32]

Plaintiffs cite recent decisions from other federal district courts in other circuits construing the 1996 Act.[33] In those decisions, the courts generally conclude that because the Act gave state commissions a choice to either "opt-out" of the regulatory scheme or to participate, their act of participation revoked their Eleventh Amendment immunity.

Although the cases cited by the telephone companies are quite numerous and appear to be on point, the Fifth Circuit has already spoken on the issue of "post-*Semi-*

---

**26.** *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305, 110 S.Ct. 1868, 1873, 109 L.Ed.2d 264 (1990); *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974).

**27.** *Atascadero*, 473 U.S. at 241, 105 S.Ct. 3142.

**28.** La.Rev.Stat.Ann. § 13:5106 A. "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."

**29.** *Welch v. Texas Department of Highways and Public Transportation*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389; see also, *Edelman*, 415 U.S. at 673–74, 94 S.Ct. at 1361; *Port Authority Trans–Hudson Corp.*, 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264; and *Atascadero*, 473 U.S. at 247, 105 S.Ct. at 3149.

**30.** *Edelman*, at 673, 94 S.Ct. at 1360.

**31.** *Atascadero*, 473 U.S. at 238 n. 1, 105 S.Ct. at 3145 n. 1; *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360–61.

**32.** The following cases question the validity of constructive waiver of immunity in the wake of Seminole Tribe: *Chavez v. Arte Publico Press*, 157 F.3d 282, 285–287 (5th Cir.1998); *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 364–65 (3d Cir.1997); *Close v. New York*, 125 F.3d 31 (2nd Cir.1997); *Digiore v. Illinois*, 962 F.Supp. 1064, 1075 (N.D.Ill.1997) *American Fed'n of State, County and Mun. Employees, AFL—CIO v. Com. of Virginia*, 949 F.Supp. 438, 442 (W.D.Va.1996).

See Footnote 33 for examples of cases ruling that constructive waiver is still applicable.

**33.** See BellSouth's Brief on Applicability of the Eleventh Amendment, p. 2.

*nole Tribe*" implied waiver of immunity. The Fifth Circuit decision in *Chavez v. Arte Publico Press*[34] binds this court, not that of other circuits or of other federal district courts.

In *Chavez*, a university professor brought suit against a public university where she worked alleging violations of the Copyright Act and Lanham Act. The plaintiff claimed that the university published her books and named her as a selector of plays in another published book without her permission. Upon first hearing the case, the Fifth Circuit affirmed the district court's decision to deny defendant's motion to dismiss based on sovereign immunity.[35] The Supreme Court, however, remanded the case to the Fifth Circuit for reconsideration in light of the *Seminole Tribe* decision.[36]

Upon rehearing, the Fifth Circuit held that to the extent that the Copyright and Lanham Act purported to supply the authority to abrogate the university's immunity from suit in federal court, it violated the Eleventh Amendment. After concluding that there could be no abrogation of immunity, the Fifth Circuit moved on to whether implied immunity was still viable after *Seminole Tribe*. The court stated:

> "A fair reading of *Seminole* inescapably suggests that we must 'drop the other shoe,' (citing *Union Gas*, 491 U.S. at 43, 109 S.Ct. at 2303) and declare that Congress cannot condition states' activities that are regulable by federal law upon their 'implied consent' to being sued in federal court. The express provisions of the Copyright and Lanham Acts that purport to require the contrary are out-

side of Congress's power under Article I."[37]

■ This court finds *Chavez* to be applicable here and binding precedent. In light of *Chavez*, this court holds that the Public Service Commission could not constructively waive its Eleventh Amendment immunity.

There are several other reasons, however, why the Public Service Commission has not waived immunity. First, a state agency such as the Public Service Commission is without authority to waive Eleventh Amendment immunity.[38] Any waiver must be accomplished by an agency to which the power to waive immunity is granted under state law.[39] As noted earlier, there is no such Louisiana law.

Even under pre-*Seminole Tribe*/*Chavez* criteria for constructive waiver, the Public Service Commission would remain immune from suit in federal court. Accepting that the 1996 Act does express in "unmistakabl[y] clear language" the Congress' intent to permit suit against the state in federal court,[40] such congressional explicitness is only one predicate necessary to waiver of immunity by the state. The area of telecommunications regulation is not a nonsovereign area and such implied waivers have been confined to voluntary state participation in non sovereign matters. Regulation of local exchange carriers has traditionally been within the police powers of the states. Ensuring adequate local telephone communications is an important governmental role of the state. The Public Service Commission is not attempting to enter the communications market, but only to regulate a local industry. Lastly, the participation of the state was not vol-

---

**34.** 157 F.3d 282 (5th Cir.1998).

**35.** *Chavez v. Arte Publico Press*, 59 F.3d 539 (5th Cir.1995).

**36.** *University of Houston, Texas v. Chavez*, 517 U.S. 1184, 116 S.Ct. 1667, 134 L.Ed.2d 772 (1996).

**37.** *Chavez*, 157 F.3d at 287.

**38.** *Magnolia Venture Capital Corp. v. Prudential Securities, Inc.*, 151 F.3d 439 (5th Cir. 1998) citing *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945).

**39.** *Id.*

**40.** *Welch*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389.

untary. Upon passage of the 1996 Act, the states were forced to either abide by the federal regulations or cede the power to regulate to the FCC—a classic *Hobson's* choice. The option of either consenting to federal regulation and waiving immunity or losing the previously held power to regulate a local exchange carrier is not a choice that this court sees as voluntary.[41]

## C. EX PARTE YOUNG

■ The *Ex Parte Young* doctrine permits a lawsuit against a state where the Eleventh Amendment would otherwise prevent it. However, the suit must name a state official in his or her individual capacity rather than the state or the state official in his official capacity.[42] Additionally, the relief sought by the plaintiff must be in the form of injunctive relief not damages.[43] Prior to *Seminole Tribe*, the Supreme Court held that a plaintiff suing a state for an alleged violation of federal law may only request an injunction of the official's future conduct.[44]

After *Seminole Tribe*, a party's attempt to bypass the Eleventh Amendment using *Ex Parte Young* has been even further restricted. The *Seminole Tribe* decision narrowed the *Ex Parte Young* doctrine by holding that "where the Congress has created a remedial scheme for the enforcement of a particular federal right, a court should hesitate before casting aside those limitations and permitting an action against a state officer." [45]

Plaintiffs here allege an ongoing violation of a federally protected right. They seek prospective injunctive relief against the state agency and officials. However, the application of *Seminole Tribe* to an *Ex Parte Young* analysis requires two additional steps to the inquiry. First the court must determine whether the Congress created a remedy for the federal statutory rights it created. Next, a court must determine whether the congressional remedy authorizes a suit against a state official.[46]

■ Under the additional *Seminole Tribe* analysis, the plaintiffs cannot proceed against the state officials under *Ex Parte Young*. First, the 1996 Act provides a remedial scheme which limits the type of judicial remedy available.[47] The 1996 Act specifically limits the relief available in a federal district court to a determination by the federal court that "the agreement or statement meets the requirements of section 251 of this title and this section".[48] Under the 1996 Act, state commissions are in charge of overseeing and supervising interconnection agreements and statements. In this case, the Public Service Commission, participated in the mediation and arbitration process which led up to approval of the interconnection agree-

---

**41.** See *Digiore*, 962 F.Supp. at 1075–1076 ("When the constructive waiver doctrine is applied to activities that the state has but little choice to engage in, the waiver-abrogation distinction erodes even further. A state can hardly manifest consent to suit by 'choosing' to perform an essential governmental function, such as policing... Under these circumstances, 'the state has no realistic options and, thus, there is no practical distinction between constructive waiver and Congressional abrogation.' Likewise, simply allowing the federal government a hand in regulating some portion of state activity does not translate, by itself, into the state's consent to suit in federal court.") (citations omitted).

**42.** *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

**43.** *Kroll v. Board of Trustees of the University of Illinois*, 934 F.2d 904, 907–08 (7th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). See also *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358; *Green v. Mansour*, 474 U.S. 64, 68–69, 106 S.Ct. 423, 425–426, 88 L.Ed.2d 371 (1985).

**44.** *Edelman*, 415 U.S. at 662–665, 94 S.Ct. at 1355–56.

**45.** *Seminole Tribe*, 517 U.S. at 74, 116 S.Ct. at 1132.

**46.** *Id.* at 75, 116 S.Ct. 1114.

**47.** See 47 U.S.C. § 252.

**48.** *Id.*

ments and the BellSouth Statement. Also, the Public Service Commission was granted adjudicatory capacity to review and approve the final agreements and statements to ensure that they are in compliance with the 1996 Act.

The telephone companies contend that the scheme devised by the Congress was optional. The Public Service Commission and other commissions have the "option" under the 1996 Act to defer authority to the FCC. As stated above, this was not an option. The states were told that they would basically either participate in regulating local exchange carriers under the 1996 Act or turn over such power to the FCC.

Furthermore, the 1996 Act does not meet the second part of the *Seminole Tribe* analysis. The 1996 Act contains no provisions that authorize suit against the members of the Public Service Commission. The fact that the Congress created an unconstitutional remedy which allowed for suit against the state does not change the result. As in *Seminole Tribe,* if this court were to apply the *Ex Parte Young* exception, it would expose the state regulators to a more severe action than anticipated by section 252(e)(6). This court is prevented from "rewriting the statutory scheme in order to approximate what [this court] think[s] the Congress might have wanted", and thus, it is without jurisdiction to proceed against the individual commissioners.[49]

### D. JUDICIAL REVIEW OF STATE ACTION

AT & T argues, in the alternative, that this is not a suit against the state under the Eleventh Amendment, even though the

Public Service Commission is named as a party. It argues that it is simply a suit for appellate review. They argue that the court's duty is to determine whether certain provisions of the Agreement, arbitrated and imposed by the Public Service Commission, violate federal law.

Early Eleventh Amendment jurisprudence characterizes a suit against the state is one where " 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' "[50]

■ AT & T argues that the record is being brought into court for judicial review to see whether it complies with the 1996 Act. Plaintiffs suggest that if it does not, this court should remand this case to the Public Service Commission for further proceedings. The court disagrees. The subsection providing for judicial review of a state commission's action was intended to make state commissions subject to federal court suit.[51] The 1996 Act was intended to review a state's actions, not an action to review the agreements themselves.[52] If this court were to make an appellate-style ruling declaring that the state's actions were not in compliance with the 1996 Act, the result would be a disrespect for state autonomy in decision-making, which is precisely what the Eleventh Amendment was intended to avoid. The fact that the Congress unconstitutionally authorized such is irrelevant. Indeed, " '[t]he very object and purpose of the Eleventh Amendment [is] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.' "[53]

**49.** *Seminole Tribe,* 517 U.S. at 74–76, 75 n. 17, 116 S.Ct. 1114, 134 L.Ed.2d 252.

**50.** *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908–09 n. 11, 79 L.Ed.2d 67 (1984) (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)).

**51.** See 47 U.S.C. §§ 251, 252.

**52.** *MCI Telecommunications Corp. v. Illinois Commerce Commission,* 168 F.3d 315 (7th Cir.1999).

**53.** *Puerto Rico Aqueduct and Sewer Auth.,* 506 U.S. 139, 146, 113 S.Ct. 684, 689, 121 L.Ed.2d 605, (quoting *In re Ayers,* 123 U.S. 443, 505, 8 S.Ct. 164, 183, 31 L.Ed. 216 (1887)). ("[F]ederal judges—who have no constituency—have a duty to respect legiti-

■ Although the plaintiffs in this case seek relief from BellSouth, it is quite clear to this court that the main thrust of their complaint is for declaratory and injunctive relief against the Public Service Commission. The relief sought concerns the rulings and orders of the Public Service Commission. As stated above, the Eleventh Amendment prevents this court from exercising jurisdiction over the Public Service Commission. If the Public Service Commission is no longer a party, review of the Public Service Commission decision would result in this court disregarding the state's autonomy. This court lacks the power to create a remedy under the 1996 Act.[54] The congressional choice of remedy must be respected.[55] Therefore, the plaintiffs can no longer obtain the relief that they requested in their complaints against the Public Service Commission.

## III. CONCLUSION

For the reasons assigned above, this court finds that under the Eleventh Amendment to the Constitution, the Louisiana Public Service Commission, is immune from suit in this matter. It follows that the court lacks subject matter jurisdiction and these actions shall be dismissed for want of jurisdiction.

---

mate policy choices made by those who do"); see also *Silberman, Chevron—The Intersection of Law & Policy,* 58 Geo.Wash.L.Rev. 821, 822–824 (1990).

54. See *Seminole,* 517 U.S. at 74–76, 75 n. 17, 116 S.Ct. 1114, 134 L.Ed.2d 252 (stating that the Court could not "rewrite the statutory scheme in order to approximate what we think Congress might have wanted.").

55. "[W]here Congress provides a specific and adequate means to seek review of an agency determination, alternative means of review are inapplicable." *Southwestern Bell Telephone Co. v. McKee,* No. Civ.A. 97–2197–EEO, 1997 WL 450041, *4 (D.Kan. July 15, 1997) (citing *Califano v. Sanders,* 430 U.S. 99, 108–109, 97 S.Ct. 980, 985–986, 51 L.Ed.2d 192 (1977)).