*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0025A (6th Cir.)
File Name: 00a0025a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MICHIGAN BELL TELEPHONE
COMPANY, d/b/a Ameritech
Michigan,
　　　　　　*Plaintiff-Appellee,*

　　　　　*v.*

CLIMAX TELEPHONE
COMPANY,
　　　　　　　*Defendant,*

JOHN G. STRAND, JOHN C.
SHEA, and DAVID A.
SVANDA, Commissioners of
the Michigan Public Service
Commission (In Their
Official Capacities and not as
Individuals),
　　　　　*Defendants-Appellants,*

UNITED STATES OF AMERICA,
FEDERAL COMMUNICATIONS
COMMISSION,
　　　　　　　*Intervenors.*

No. 98-1315

1

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 97-00197—Gordon J. Quist, District Judge.

Argued:  April 29, 1999

Decided and Filed:  January 18, 2000

Before:  JONES, BOGGS, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David A. Voges, OFFICE OF THE ATTORNEY GENERAL, PUBLIC SERVICE DIVISION, Lansing, Michigan, for Appellants.  John E. Muench, MAYER, BROWN & PLATT, Chicago, Illinois, for Appellee.  Susan Pacholski, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Intervenors.  **ON BRIEF:**  David A. Voges, David M. Gadaleto, OFFICE OF THE ATTORNEY GENERAL, PUBLIC SERVICE DIVISION, Lansing, Michigan, for Appellants.  John E. Muench, Robert M. Dow, Jr., Theodore A. Livingston, MAYER, BROWN & PLATT, Chicago, Illinois, Jeffrey V. Stuckey, Joseph A. Fink, John M. Dempsey, Edward R. Becker, DICKINSON WRIGHT, Lansing, Michigan, for Appellee.  Susan Pacholski, Mark B. Stern, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Intervenors.

BOGGS, J., delivered the opinion of the court, in which JONES, J., joined.  COLE, J. (p. 13), delivered a separate opinion concurring in part and dissenting in part.

---

**AMENDED OPINION**

---

BOGGS, Circuit Judge.  Climax Telephone Company expanded its local exchange service into the service territory of Michigan Bell Telephone Company, d/b/a/ Ameritech Michigan ("Ameritech").  Climax petitioned the Michigan Public Service Commission (the "PSC") for arbitration of the terms, conditions, and prices for interconnection and related arrangements from Ameritech, under Section 252 of the federal Telecommunications Act of 1996 (the "FTA" or the "Act"), 47 U.S.C. § 252, and "the procedure adopted by the [PSC's] Order dated July 16, 1996, in Case No. U-11134." An arbitration panel rendered its decision, to which both parties objected.  The PSC rejected the objections, adopted the arbitration panel's decision, and approved an interconnection agreement between the parties based on the arbitration panel's decision.

Ameritech sued Climax and the Commissioners of the PSC in their official capacities, seeking declaratory and injunctive relief against enforcement of the interconnection agreement. The Commissioners moved to dismiss the complaint against them, citing provisions of the Act, the doctrine of sovereign immunity, and the Tenth and Eleventh Amendments.  The district court denied the motion, and the Commissioners appeal its decision.  We granted the Federal Communications Commission ("FCC") intervenor status, and now affirm the judgment of the district court.  Only the interlocutory appeal is before us—the merits of the case have not yet been considered below.

**I**

Climax is an established local exchange carrier ("LEC") serving the Climax, Michigan area.  On July 30, 1996, Climax filed an application with the PSC to provide local exchange service in the greater Battle Creek and Kalamazoo, Michigan

area, where Ameritech is the incumbent provider. The application showed that Climax intended to establish a local calling area covering the geographical area served by four Ameritech local calling areas. In late 1996, Climax and Ameritech began negotiating an interconnection agreement and reached resolution on all but seven issues.

On March 10, 1997, just before the end of the statutory period for timely filing of petitions for arbitration, *see* 47 U.S.C. § 252(b)(1), Climax petitioned for arbitration. Pursuant to the procedures established in its opinion in case number U-11134, the PSC assigned the matter to an arbitration panel composed of two technical staff people and one administrative law judge. *See* Case No. U-11134, 1996 WL 467772 (Mich. P.S.C. July 16, 1996). The panel addressed the five open issues; on May 21, 1997, it adopted Climax's proposed resolution as to three issues, Ameritech's proposed resolution as to one issue, and found that the fifth issue was not properly raised.

On June 25, 1997, the PSC adopted the decision of the arbitration panel and ordered the parties to file the interconnection agreement.[1] One commissioner dissented. On July 11, 1997, the parties filed the agreement. On July 25, 1997, Ameritech moved for a rehearing, which the PSC denied on August 13.

On September 12, 1997, Ameritech filed a complaint in federal district court against Climax and the PSC Commissioners in their official capacity. Ameritech seeks declaratory determinations that (1) certain sections of the

---

[1]The terms of the agreement are not important for purposes of the case now before us. The primary dispute in the case underlying the present appeal involves a term of the agreement that requires Ameritech to charge Climax local rates to terminate calls originating within Climax's large local area (but outside Ameritech's smaller local area), for which Ameritech would otherwise charge toll rates. Ameritech argues that this term is contrary to §§ 251 and 252 of the Act.

---

## CONCURRING IN PART, DISSENTING IN PART

---

R. GUY COLE, JR., concurring in part and dissenting in part. I am in complete agreement with the majority's disposition of the Commissioners' Eleventh Amendment claim. I write separately because I do not believe that this court has jurisdiction to consider the interlocutory appeal of the Commissioners' other claims.

The Commissioners' Eleventh Amendment claim is clearly appealable under the collateral order exception. *See Sault Ste. Marie Tribe of Chippewa Indians v. Michigan,* 5 F.3d 147, 149 (6th Cir. 1993). However, the Commissioners' Tenth Amendment and § 252 claims are not appealable collateral orders because those claims are not "effectively unreviewable on appeal from a final judgment." *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468-69 (1978). In addition, those claims do not fall under the doctrine of pendent appellate jurisdiction because they are not "inextricably intertwined" with the Eleventh Amendment claim, such that the Eleventh Amendment claim could not be determined without first addressing the nonappealable claims. *See Chambers v. Ohio Dep't of Human Servs.,* 145 F.3d 793, 797 (6th Cir.), *cert. denied,* 119 S. Ct. 408 (1998).

Accordingly, I would affirm the district court's denial of the Commissioners' motion to dismiss based on the Eleventh Amendment, but dismiss the Commissioners' other claims for lack of jurisdiction.

the scope of a federal court's inquiry, but it does not limit the proper parties for suit.

### III

On *de novo* review, the Commissioners' claims in this interlocutory appeal lack merit as a matter of law. The Eleventh Amendment does not bar Ameritech's suit because Ameritech is seeking injunctive relief against an ongoing violation of federal law. The Tenth Amendment does not bar the suit because the federal government did not commandeer state resources. Michigan chose to regulate interconnection agreements. Finally, the Act does not jurisdictionally bar the suit. Accordingly, the district court's denial of the Commissioners' motion to dismiss is AFFIRMED and the case is REMANDED for trial.

agreement violate the Act, the implementing regulations, state law, and the United States Constitution, and (2) the PSC lacks jurisdiction to decide one of the issues. Ameritech also seeks to enjoin enforcement of those sections of the agreement, and to reform the agreement.

On November 24, 1997, the Commissioners moved to be dismissed as defendants, on grounds that (1) the district court lacked personal jurisdiction over them and (2) Ameritech failed to state a claim on which relief can be granted. The district court heard oral argument and denied the motion. The Commissioners appeal the denial of their motion to dismiss. This court ordered the Commissioners to show cause why the appeal should not be dismissed for lack of jurisdiction. *See* 6th Circuit Docket, Case No. 98-1315, March 25, 1998. On the Commissioners' further showing, the order was withdrawn on the ground that district court orders denying dismissal on Eleventh Amendment grounds are appealable collateral orders. *See* Order, Case No. 98-1315, April 16, 1998.

### II

Where the district court bases its denial of a motion to dismiss for failure to state a claim purely on the legal sufficiency of the plaintiff's case, we review the decision *de novo*. *See Barrett v. Harrington*, 130 F.3d 246, 251 (6th Cir. 1997) (citing *RMI Titanium v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)). All factual allegations in the complaint are accepted as true. *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir. 1987) (*en banc*).

"Where a trial court's ruling on jurisdiction is based in part on the resolution of factual disputes, a reviewing court must accept the district court's factual findings unless they are clearly erroneous. However, review of the district court's application of the law to the facts is *de novo*." *RMI Titanium v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.

1996) (internal citations removed) (citing *Ynclan v. Dep't of the Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991)).

Questions of statutory interpretation, like all matters of law, are reviewed *de novo*. *See United States v. Brown*, 915 F.2d 219, 223 (6th Cir. 1990).

## A.   The Telecommunications Act of 1996

Congress enacted the FTA to promote competition in all telecommunications markets, including the local service market. *See* H.R. Conf. Rep. No. 104-458, at 113 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124. Title I, Part II of the Act provides standards and procedures to allow startup carriers to interconnect their networks to the incumbent carrier's network, to access the incumbent carrier's network elements piece-by-piece, to purchase the incumbent carrier's retail services "at wholesale rates" for resale, and to access the incumbent carrier's physical infrastructure and facilities for connection purposes. 47 U.S.C. §§ 251(b)(4) and 251(c)(6). The Act contemplates that state public utility commissions will assume regulatory authority over interconnection agreements; if a state chooses not to do so "in any proceeding or other matter under this section," the FCC will assume regulatory authority "with respect to the proceeding or matter." 47 U.S.C. § 252(e)(5).

The Act requires incumbent providers to negotiate in good faith with new entrants; if the parties cannot resolve their differences, either party may petition the regulatory authority for arbitration of the unresolved issues. *See* 47 U.S.C. §§ 251(c), 252(b). The arbitration panel "shall limit its consideration of any petition [for arbitration] (and any response thereto) to the issues set forth in the petition and in the response, if any . . . ." 47 U.S.C. § 252(b)(4)(A). The arbitration panel must ensure that its resolution meets the requirements of § 251 and the FCC regulations implementing § 251, *see* 47 U.S.C. § 252(c)(1), and the regulatory authority may reject an arbitrated resolution *only if* it does not meet

The Commissioners' Tenth Amendment argument is also unavailing. The Commissioners argue that the doctrine of *New York v. United States*, 505 U.S. 144 (1992), and *Printz v. United States*, 521 U.S. 98 (1997), prohibits Ameritech's suit as a "commandeering" of state resources. Michigan chose to regulate interconnection agreements under the Act. It could have chosen not to participate, in which case it would not have arbitrated and reviewed the agreement between Ameritech and Climax. Michigan did, in fact, arbitrate and review the agreement, precisely the action complained of. The state cannot have it both ways. The United States did not compel its actions and, consequently, the Tenth Amendment does not bar Ameritech's suit. *See, e.g., New York*, 505 U.S. at 167, 179 (Congress may offer the states a choice of regulating activity); *FERC v. Mississippi*, 456 U.S. 742, 768 (1982).

Finally, the Commissioners argue that they are not proper parties under § 252(e)(6). They point out that § 252(e)(6) provides that "[i]n any case in which a State commission makes a determination . . . , any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement . . . meets the requirements of section 251 [and 252]," arguing that the other party to the agreement is the only proper parties for suit. This argument misses the point. The heading of subsection (e)(6) is "Review of State commission *actions*" (emphasis added). It is the PSC's duty, if it chooses to regulate, not the other party's, to ensure that the agreement meets the requirements of the Act both at the time of arbitration, 47 U.S.C. § 252(c), and at the time of approval, 47 U.S.C. § 252(e)(2)(B). Furthermore, it is the PSC's function, not the other party's, to enforce the agreement. Lacking power to enjoin the PSC from enforcing the approved agreement, federal courts would have little effective remedy for aggrieved plaintiffs, or would subject companies to the intolerable prospect of conflicting commands from federal courts and state regulatory agencies. The language quoted above limits

The *Ex parte Young* doctrine operates as an exception to the general rule of sovereign immunity that states may only be sued with their consent. Under *Ex parte Young,* suits against state officials seeking equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment. *Ex parte Young*, 209 U.S. at 159-60. The PSC not only approved the interconnection agreement, it is responsible for ongoing enforcement of the agreement. Ameritech alleges that the agreement violates federal law, and is seeking equitable relief. Taking the alleged facts as true, as we are required to do when reviewing a dismissal for failure to state a claim, Ameritech has stated a claim against the Commissioners, and thus against the state of Ohio, for equitable relief from an ongoing violation of federal law. Under *Ex parte Young*, Ameritech is entitled to proceed.

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) and *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997), do not affect the application of *Ex parte Young* to § 252 cases. Recently, the Supreme Court once again affirmed the vitality of *Ex parte Young*, even while strongly reaffirming states' rights against suit. See *Alden v. Maine*, ___ U.S. ___, 119 S. Ct. 2240, 2266-68 (1999) (sovereign immunity does not bar certain actions against state officers for injunctive or declaratory relief) (contrasting *Ex parte Young* with *Seminole Tribe* and *Coeur d'Alene Tribe*).

If Ameritech is correct in its claim that the agreement violates federal law, the PSC's ongoing enforcement of the interconnection agreement constitutes an ongoing violation of federal law, against which Ameritech seeks injunctive relief. Therefore, under *Ex parte Young*, the Eleventh Amendment does not bar Ameritech's suit against the Commissioners.

---

*v. Arte Publico Press*, 157 F. 3d 282 (5th Cir. 1998)). *Accord Bell Atlantic-Md., Inc., v. MFS Intelenet of Md., Inc.,* Civil Case No. S 99-2061 (D. Md. Oct. 29, 1999).

those requirements, *see* 47 U.S.C. § 252(e)(2)(B). When a state acts as the regulatory authority, "any party aggrieved by [its] determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section [252]." 47 U.S.C. § 252(e)(6). The Act expressly deprives state courts of jurisdiction to review the approval or rejection of an agreement by state regulatory authorities. *See* 47 U.S.C. § 252(e)(4).

## B. Issues Presented on Appeal

The Commissioners raise four issues: (1) whether they are proper parties in a federal court action filed pursuant to 47 U.S.C. § 252(e); (2) whether the Eleventh Amendment bars naming the Commissioners in this suit; (3) whether the PSC, in arbitrating the agreement, waived sovereign immunity; and (4) whether the Tenth Amendment bars naming the Commissioners in this suit. Ameritech raises the issue of whether this court has jurisdiction to conduct interlocutory review of the Commissioners' "proper parties" and Tenth Amendment claims.

Ameritech and the FCC both cite numerous district court cases, twenty-three altogether, each of which denies the state regulatory agency's motion to dismiss. Recently, the Seventh Circuit became the first appellate court to consider the issue. *MCI Telecommunications Corp. v. Illinois Commerce Comm'n*, 168 F.3d 315 (7th Cir. 1999). The panel rejected the Commissioners' Eleventh Amendment argument and affirmed the district court's denial of their motion to dismiss.

## C. Jurisdiction to Decide the Appeal

"Ordinarily, appellate jurisdiction is lacking to hear an appeal from an order denying a Rule 12(b)(6) motion to dismiss since such an order is interlocutory in nature." *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 225 (4th Cir. 1997); *see also Hill v. New York*, 45 F.3d 653, 659 (2d Cir. 1995) ("a

denial of a motion to dismiss is ordinarily considered non-final, and therefore not immediately appealable").

The Commissioners invoke the jurisdiction of this court pursuant to 28 U.S.C. § 1291 and the collateral order doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949). "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. To be appealable as a collateral order, a district court's order must 1) conclusively decide the disputed issue; 2) resolve an important issue separate and independent from the merits of the action; and 3) be effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468–69 (1978). The Commissioners assert that their Tenth and Eleventh Amendment claims were conclusively determined by the district court, that they are completely separate from Ameritech's claim that the agreement is inconsistent with federal law, and that they would be effectively unreviewable on appeal from a final judgment. The Commissioners also argue that the Tenth Amendment claim is "inextricably intertwined" with their other claims, and assert jurisdiction under the doctrine of "pendent appellate jurisdiction." *See Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797 (6th Cir. 1998).

Ameritech concedes that this court has jurisdiction to hear the Commissioners' Eleventh Amendment claim. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–48 (1993); *Sault Ste. Marie Tribe of Chippewa Indians v. Michigan*, 5 F.3d 147, 149 (6th Cir. 1993). Ameritech argues that this court does not have jurisdiction to hear the claim that the Commissioners are not proper parties, nor the claim that the Act violates the Tenth Amendment. The district court's order is not a proper collateral order with respect to either claim, Ameritech contends, nor is either claim "inextricably intertwined" with the Eleventh Amendment claim to confer jurisdiction. *See Chambers*, 145 F.3d at 797 ("pendent appellate jurisdiction

. . . only may be exercised when the appealable issue at hand cannot be resolved without addressing the nonappealable collateral issue"). Clearly, the Eleventh Amendment claim can be resolved without resolving either of the other claims.

All of the Commissioners' claims are separate and independent of the issue of whether the agreement is consistent with federal law, have been conclusively decided below, and would be effectively unreviewable on appeal from a final judgment. We must decide the Eleventh Amendment claim in any event, and it would be a waste of judicial resources not to hear the other claims now. Finally, all of the Commissioners' claims are unavailing.

## D.  Discussion

Although the Commissioners disagree, the case before this court is a straightforward *Ex parte Young* case. See *Ex parte Young,* 209 U.S. 123 (1908). Most district courts that have addressed this issue have applied the *Ex parte Young* doctrine and denied the state regulatory authorities' motions to dismiss.[2] We now do the same.

---

[2] Similarly, the Seventh Circuit recently decided *MCI Telecommunications Corp. v. Illinois Commerce Comm'n,* 168 F.3d 315 (7th Cir. 1999), against the Illinois Commissioners. Although we agree with the result, we do not base our decision on the reasoning in that case because the court reached its decision by applying the constructive waiver doctrine, which has since been limited by the Supreme Court in *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 119 S. Ct. 2219 (1999), and did not reach the *Ex parte Young* issue. See *MCI*, 168 F.3d at 320-23, *amended* 183 F.3d 558, 564-67. The Seventh Circuit has subsequently granted rehearing en banc on this opinion. 183 F.3d 567-68.

On March 29, 1999, the Middle District of Louisiana apparently became the first court to grant immunity to a state regulatory body. See *AT&T Communications of South Central States v. Bellsouth Telecommunications, Inc.*, 43 F. Supp. 2d 593 (M.D. La. 1999). The court considered itself bound by Fifth Circuit precedent interpreting *Seminole Tribe* as extinguishing waiver. See *id.* at 600-01 (citing *Chavez*